## C. J. McCARTY ET AL. v. MRS. O. S. JOHNSON ET AL.

### Decided January 20, 1899.

1. **Adverse Possession of Ten Years—Limitations—Improvements.**

The title by adverse possession of one claiming 160 acres of land under the ten years statute of limitation is not limited to so much of the land only as is actually covered by the improvements made by him.

2. **Same—Possession Held Sufficient.**

A finding that there has been an actual and visible appropriation of 160 acres land sufficient to support a title by adverse possession under the ten years statute is justified by evidence that the land was surveyed and cut off from a larger tract and continuously claimed by the possessor, who lived on a small adjoining tract and who intended to acquire title to the 160 acres by limitation, and for eighteen years cut and stacked hay thereon, planted a grove of trees, placed troughs, and fed and watered her stock thereon, and built a house which she rented and otherwise used, in connection with evidence that her claim was known to the owner of the larger tract, and that he finally acknowledged her title by limitation.

3. **Judicial Notice—Spanish Alcalde.**

The court will take judicial notice that a certain person was first alcalde of a municipality in 1832, where the fact that he held such office is made notorious by the history of the time, even if the court should not ordinarily take judicial notice of the incumbents of office under the former government.

4. **Deed—Acts of Sale Under Spanish Government—Protocol.**

Acts of sale executed before and duly authenticated by the first alcalde of a municipality in Texas under the Spanish-Mexican government prove themselves when found in the proper custody; but the instrument which proves itself is the protocol and not the testimonio delivered to the party.

5. **Same—Registration—Certificate of Copy.**

A copy of the original protocol of an act of sale is not entitled to registration under the statutes, if not properly certified to be such by the custodian of the original.

6. **Same—Same.**

A certified copy from the county records of a purported original protocol of an act of sale before the first alcalde of a municipality in Texas under the Mexican government, which, however, is not properly authenticated by the official signature of that officer and which is not shown ever to have constituted an archive of his office, is not admissible, even if under the statute such an instrument could be withdrawn

for the purpose of registration from the archives in which it was required to be deposited.

**7.  Same—Proof by Subscribing Witnesses.**

The requirement of the Act of 1839, that proof of the execution of a deed shall be made by a subscribing witness, repeals so much of the Act of 1836 as authorized such proof by others.

**8.  Same—Circumstantial Evidence of Lost Deed—Copies.**

A certified copy of the record of a deed, though such record be invalid because the execution of the deed was not proved so as to entitle it to registration, may nevertheless be considered as secondary and circumstantial evidence of the deed, upon proof of the loss of the original deed, in connection with evidence of other circumstances indicating its existence.

APPEAL from Harris.   Tried below before Hon. WILLIAM H. WILSON.

*G. H. Pendarvis* and *Ewing & Ring,* for appellants.

*Fisher, Sears & Sherwood,* for appellees.

WILLIAMS, AssocIATE JUSTICE.—In stating our reasons for reversal of the judgment, we shall not undertake a full discussion of all of the many points urged in the briefs, but upon most of them shall simply state our conclusions.   The judgment in favor of appellee Johnson for 160 acres of the 520 acres tract claimed by appellant McCarty was based upon her plea of title under the ten years statute of limitations, and the questions upon the decision of which the correctness of that judgment depends come naturally first in order.

Appellee, when she entered upon the land in controversy, caused a tract of 160 acres to be surveyed and marked off, and of that she took possession, such as she had, and to it alone asserted claim.   In her answer she alleged title to this specific tract by limitation of ten years, and sought judgment for it; but, in the alternative, asked that, if this relief be denied her, she recover 160 acres to be defined under orders of the court.

The court below held that she was not entitled to define the land claimed by her, and instructed the jury that, if they should find the requisite facts to sustain her plea of limitation, they should find for her 160 acres undefined; and, a verdict in her favor having been returned accordingly, the judgment was rendered providing for the setting off to her of the land out of the tract sued for by plaintiffs, regardless of her specific claim.

In this we think there was error.   The error originated in the holding that appellee could not entitle herself, under the ten years statute, to a specific tract with defined boundaries, because, as is urged by one of appellant's counsel, the statute does not in terms give her the right to determine the boundaries of her possession.   But the answer is, that her title to any land must arise from an adverse possession, and that is constituted by "an actual and visible appropriation of the land commenced and continued under a claim," etc.   Without such claim there can be no adverse possession, and hence no title.   It necessarily follows that a

possessor who asserts no claim beyond defined boundaries can not acquire title beyond them; but, if the tract which he claims and of which he has made an actual and visible appropriation, does not exceed 160 acres, all of the requirements of the statute meet, and his title to such tract becomes complete at the end of ten years. This is a very different question from that decided in Bering v. Ashley, 30 Southwestern Reporter, 838. There the possessor's claim was an indefinite one upon a larger tract than 160 acres, and the land to which his title matured was not defined by a claim limited by metes and bounds. It often happens that the possessor enters under a claim to a specific tract defined by a prior survey, not evidenced by any muniment of title, and asserts no claim beyond such survey. In such cases it has never been contended that he acquires more than the tract claimed, though it be less than 160 acres.

We are therefore of the opinion that appellee's recovery should have been of the specific tract marked off and claimed by her, and not of an undefined tract as adjudged. If this were all, it would be by no means clear that appellants, under their assignments of error, would be in an attitude to avail themselves of the error; but objections are made to errors in the judgment which resulted from that which we have just pointed out. As a consequence of it, the judgment authorizes the survey of the whole of the 160 acres to be made out of appellant's land, while it is evident that the 160 acres claimed by appellee conflicts with it to a less extent, and this feature of the judgment is objected to in the assignments of error.

The judgment as it stands must therefore be reversed, and we are precluded from rendering judgment for appellee for the specific tract by the fact that she has not obtained a verdict for it, and the further opinion that the evidence, while it may be sufficient to support a finding of the jury in her favor, is not so clear and conclusive as to authorize this court to render judgment without a finding of the jury. Railway v. Strycharsky, 37 S. W. Rep., 415.

It is strenuously insisted by appellants that the evidence is insufficient to warrant a recovery by appellee of any of the land in controversy.

The evidence shows that, in 1871, appellee became the owner of a tract of 50 acres adjoining a tract of 1000 or 1300 acres, in the same league, then owned by parties under whom appellants claim, upon which she made her homestead improvements and has ever since lived. As early as 1872 she caused 160 acres on the large tract adjoining the 50 acres to be surveyed, and upon it built a house which she rented and otherwise used. Some of the evidence warrants the conclusion that this house thus possessed by her remained on the 160 acres for more than ten years, after the expiration of which she moved it upon her 50 acres tract. She also built one barn wholly, and another partly, upon the 160 acres, and has since kept them there, but the evidence does not show when this was done. Four or five years before this suit was brought, she extended her fence across the line of the 50 acres and inclosed about seven acres of the 160 acres. From the time when she first had the tract surveyed she has

continuously claimed it, intending to acquire title to it by limitation. For as long as eighteen years she cut and stacked hay upon the land. She also planted a grove of trees and placed troughs upon the land, and there fed and watered her stock. Her claim was known to the owner of the larger tract, and there is evidence that he finally acknowledged her title by limitation. The Houston Land and Trust Company subsequently acquired title to the large tract, and, a short while before this action was begun, appellant McCarty bought from that company, out of such tract, the 520 acres in controversy, which includes most, but not all, of the 160 acres claimed by appellee Johnson.

These were the leading facts relied on to sustain the plea of limitation, and they were sufficient, in our opinion, to require the court to submit the question to the jury.

The building and occupancy of the house upon the land, together with the other facts stated, might properly be held by a jury to have been an actual and visible appropriation of the land, which, if continued for the requisite period, would give title. We thus confine our opinion to the house and other facts just stated, for the reason that it appears that the inclosure had not been upon the land for ten years, and it is not made to appear how long the barns had been upon it, nor that any of these were upon it when the first house was removed. The cutting of hay, the keeping of food and water for stock upon the land, and the survey and claim asserted, would not by themselves by sufficient, but they may be considered in connection with the house as constituting the visible and notorious appropriation required by the statute.

The decisions of the Supreme Court in the cases of Porter v. Miller, 76 Texas, 597, and Simpson v. Johnson, 46 Southwestern Reporter, 628, seem to dispose of appellant's contention that appellee could not hold by limitation more than the land actually covered by her improvements, and to render unnecessary a discussion on our part of the contentions advanced in the interesting arguments of counsel. We think those decisions follow the plain language of the statute, and that they do not necessarily conflict with Bracken v. Jones, 63 Texas, 184, and Snow v. Starr, 75 Texas, 418. The other assignments of error relate to the rulings of the court in the admission and exclusion of evidence.

The court excluded the instrument by which plaintiffs sought to deraign title from John Brown, the original grantee of the league, and this ruling is assigned. The instrument offered was a certified copy from the record of Harris County of what was, in form, an act of sale from Brown to Stephen Richardson and Thomas Davis, dated October 13, 1832, in the town of San Felipe de Austin, before Horatio Chrisman and instrumental and assisting witnesses. In all respects it was in the form usually employed at that date in such transactions, except that, neither in the body nor the signature to it, does Chrisman assume to act officially, further than may be implied from the word "primero" or "first," immediately following his name in the body, and the fact that the ordinary

verbiage of such documents in other respects is employed. Following the instrument in the record were these certificates:

"*Republic of Texas, County of Austin.*—No. 25, the foregoing deed of sale was entered in the recorder's office and recorded in the Spanish records, book A. pages 51, 52, and 53 San Felipe de Austin, 22d Jan'y., 1838.

"I. BENTON JOHNSON, Clerk.

"Recorded June 29, 1848, at 9 o'clock, a. m.

"W. R. BAKER, Clerk, H. C."

In connection with the record, appellants offered to prove by oral testimony that Chrisman, at the date of the act, was first alcalde of the municipality of Austin, which evidence was also excluded.

Whether the courts should judicially know who were the persons holding such offices under the former government, as a general rule, or not (Smith v. Townsend, Dallam), we agree with counsel for appellant that the fact that Chrisman held the office named is made notorious by the history of the time, and hence should be taken cognizance of by the courts without proof. We may therefore treat the ruling as to the oral evidence as immaterial and assume the fact, thereby sought to be proved, as established. Acts of sale, when executed before and duly authenticated by such officers, prove themselves when found in the proper custody. The instrument which proves itself, however, is the protocol, and not the testimonio delivered to the party. Hatchett v. Connor, 30 Texas, 110, and cases cited. The former was retained by the officer and became an archive of his office and was proved in evidence by a copy certified by the keeper thereof. Such instruments were required to be deposited with the county clerks after the organization of the courts of the Republic (Hartley's Digest, 260), and certified copies of them were entitled to registration (Paschal's Digest, article 3717), and were also admissible in evidence in the courts. Id., art. 4984; Hutchins v. Bacon, 45 Texas. Under these well settled rules the testimonio was not entitled to registration unless authenticated in accordance with the registration law, and the method of authentication, recognized by the decisions, consisted of the acknowledgment or proof of the signature of the officer. Edwards v. James, 7 Texas, 371; Beaty v. Whitaker, 23 Texas, 528.

If the instrument offered was a record of the testimonio, it was therefore not properly recorded, as there was no authentication of it. We infer, however, that it was not the testimonio, but was either the original protocol or a copy thereof, for the reason that it does not contain the certificate, usual in testimonios, that it is the copy of the original delivered to the grantee. The State v. Cardenas, 47 Texas, 286. If it is a copy of the original it was not entitled to registration, because not properly certified to be such by any custodian of such original.

But it seems to be assumed that it was the original instrument that was recorded, and it is urged that it should be taken as Chrisman's official

act, authenticating the signature of the parties sufficiently to admit it to registration. There was no statute of which we have knowledge authorizing the withdrawal of such documents from the archives in which they were required to be deposited for the purpose of registration. Lambert v. Weir, 27 Texas, 364.

But if it were admitted that such instruments could be withdrawn for such purpose, in what way is the authenticity of this one shown sufficiently for registration? When executed with the proper formalities, and found in the proper place, acts of sale which are called authentic prove themselves, but these are the very circumstances which give them verity. This instrument is not properly certified by the official signature of the officer. Andrew v. Marshall, 26 Texas; Titus v. Kimbro, 8 Texas. The fact, of which we take judicial notice, that Chrisman was such an officer, does not prove that he certified this document. If it were found in the proper place of deposit among the archives which came from his office, it may be that it should be taken as Chrisman's official act. But such is not the case. It is not shown to have ever constituted an archive, for the certificate of the clerk does not so state. Broxson v. McDougal, 63 Texas, 197; Hutchins v. Bacon, supra. From the fact that it was recorded in Austin County among Spanish records, it by no means follows that it came from the archives of Chrisman's office, or that it was ever deposited in the office of the clerk for any purpose except to be recorded. Hence, as the instrument is not shown to have ever constituted an official archive, it can not be assumed that Chrisman executed it. The case of Butler v. Dunagan, 19 Texas, 559, involved an entirely different question.

We are also of opinion that the court below correctly held that the deed from Thomas Davis to Stephen Richardson was not duly registered. The Act of 1839, in force when the pretended proof of its execution was made, required such proof to be made by a subscribing witness, and we think in this respect, at least, it repealed so much of the Act of 1836 as may be construed to have authorized such proof by others. The authenticity of the deed in question in Secrest v. Jones, 21 Texas, 121, was sufficient under the ninth section of the Act of May 12, 1846 (Paschal's Digest, article 2792), and involved no question arising under the Act of 1836. In that decision the case of Paschal v. Perez was probably referred to for the principle of construction stated.

But, while these instruments were not properly registered, we are of the opinion that the fact of the existence of the record and what it purported to be was admissible, under general rules of evidence, as circumstantial evidence tending to prove the existence, genuineness, and contents of the deeds under which plaintiff claimed.

When original deeds have been lost and the parties and subscribing witnesses are dead, so that the direct proof of their execution and contents, as ordinarily required, can not be made, parties asserting rights under them are forced to resort to circumstantial evidence to establish them, and it is as legitimate to prove this as any other fact by that character of evidence. In this case the time which has elapsed since the time

at which plaintiff sought to prove that these deeds were executed was so great that the witnesses to them are presumed to be dead. The evidence offered to show that the originals had been lost and could not be produced may not have been sufficient to admit secondary evidence, but we do not understand that any objection was urged upon this ground. There seems to have been an agreement which relieved plaintiffs of the necessity of accounting for the originals for some purpose, but whether it was merely to allow the offer of certified copies from the record, or was broad enough to permit the introduction of any other secondary evidence, may be doubtful. At any rate, as this objection was not urged, the ruling of the court excluding the records when offered as circumstances can not be supported on this ground, and the question as to its admissibility must be determined with reference to its relevancy. The evidence showed that Richardson, under whom plaintiffs claimed, took possession of the half of the league claimed by him in 1838 and held it until 1849; that he asserted title to it and paid taxes on it, and subsequently conveyed parts of it to other parties; that he continued to claim it until his death in 1860, and after his death his heirs asserted title to and conveyed it, and that from them it passed through regular conveyances down to plaintiff, no other claim than this being ever asserted, except that of defendant, who admits that her only title is such as has arisen through limitation. Other deeds which plaintiffs produced and read in evidence contain recitals of the missing conveyances. Now, in connection with these facts, the existence contemporaneously with such possession of these records which, while not regular, may still be copies of genuine instruments, is a cogent fact tending to show that such instruments once existed and were genuine conveyances. There is no rule of law which excludes them, for, in proving a fact by circumstantial evidence, any circumstance which tends to show its existence is relevant and admissible. Lost deeds very often, indeed generally, leave traces of their existence in contemporaneous transactions in which their impress, so to speak, is left, and from these their former existence may be inferred notwithstanding their loss. Ancient leases, receipts, and recitals in deeds, which afford collateral evidence of the contemporaneous existence of other documents, are often used for the purpose of supplying proof of such documents when they have disappeared. To use the apt illustration of Professor Greenleaf, "The residue of the transaction may be as unerringly inferred from the existence of genuine ancient documents as the remainder of a statue may be made out from an existing torso, or a perfect skeleton from the fossil remains of a part." 1 Greenl., sec. 144.

In a country where titles are expected to be registered, the first place where traces of a lost deed are sought is among the records. If the record of a deed be regular, the statute gives to it a certain effect which it can not have if it has not been duly made. If it be not regular, it does not follow that its existence may not be a circumstance legally admissible as tending to show that the thing copied, also, had a real existence. Whether it was a genuine document or not is still open for investigation, and that

question may be resolved by other circumstances. That such evidence is admissible on such an issue, the following authorities clearly establish: Allen v. Read, 66 Texas, 19; Winn v. Patterson, 9 Pet., 675, 676; 1 Greenl., secs. 141-143; Guinn v. Musick, 41 S. W. Rep., 725; Heintz v. O'Donnell, 17 Texas Civ. App., 21.

We therefore think the court should have admitted these records in evidence and submitted to the jury the question as to the execution and contents of the original deeds referred to. One of the records was in the Spanish language, but the bill of exceptions shows that the translation made under the Act of 1895 (Revised Statutes, articles 4593a, 4593b), was referred to, to show what it was.

This disposes of all of appellant's assignments of error which need to be discussed.

Appellee has made cross-assignments upon rulings of the court in admitting certain deeds in plaintiff's chain of title. It is impracticable to discuss them in detail and we dispose of them all by saying that we think the rulings were correct.

Appellee has also assigned error in the charge of the court wherein the jury were, in effect, instructed that the possession of Richardson from 1838 to 1849 constituted prima facie evidence of title. Inasmuch as it is not likely that the case will be again tried upon this alone as evidence of title in plaintiff, we deem it unnecessary to discuss the question further. Reversed and remanded.

*Reversed and remanded.*