[No. 1779, November 1, 1915.]
UNION LAND & GRAZING CO. et al. v. ARCE et al.
VEEDER v. BONEY.

### SYLLABUS BY THE COURT.

1. In a suit to quiet title, where a general denial is filed, the burden is upon plaintiff to establish his title, and defendant is entitled to object to the introduction in evidence of an instrument in writing under which plaintiff claims title if the same is not legally admissible, notwithstanding the fact that plaintiff may have put in evidence, before the proffer, a deed by which defendant divested himself of title, as a plaintiff, in such suit, must recover, if at all, upon the strength of his own title.

P. 124

2. (a) Where the ancient original is lost and an ancient purported copy is offered, made by private hand, and the purported maker is unknown or deceased, and the fact is established that it has been in existence for more than 30 years, and the copy comes free from suspicion, it may be received in evidence under the ancient document rule.

(b) Where the ancient original is lost, or for other sufficient reasons cannot be produced at the trial, and a purporting official record is offered, made more than 30 years before, and certifying the deed contents and execution, but inadmissible as an official record, because the statute law relative to its execution or acknowledgment has not been complied with, such copy is properly received in evidence, as a circumstance tending to show that the original, from which it was copied, at that time was in existence, and that it was executed by the party whose name is signed to it, but the weight to be accorded to such circumstances or link in the chain of evidence is another matter, entirely divorced from the question of the admissibility of the evidence.

(c) Such ancient record copy, alone, would not be sufficient to establish title, but would require some other confirming circumstance, such, for example, as the continuous possession of the land, or some other item of corroboration, which, coupled, with such ancient record copy, would be

sufficient to produce in the mind proof of the fact that the original deed existed, and was executed by the grantor named therein.

P. 124

3. (a) Where a grantor, in a recorded copy of a deed, testified that he did not sign or execute such deed, and his wife's name was also signed to such deed, although not required under the law to effectuate the conveyance, and she testified to facts which showed that her name had been forged thereto and such deed was also witnessed by two witnesses, although not required, and one of the said witnesses testified that, to the best of his recollection, he had never signed such deed as a witness, such testimony of the wife and witness corroborated the testimony of the grantor, within the purview of section 2175, Code 1915, the grantee named in such deed being dead, and warranted a finding that the grantor did not sign or execute such deed.

(b) Corroborating evidence may come as effectively from facts and circumstances as from the mouth of a witness giving direct testimony to the fact sought to be substantiated.    P. 128

Appeal from District Court, Mora County; D. J. Leahy, Judge.

Suit by the Union Land & Grazing Company and others against Carmen Arce and others, wherein Elmer E. Veeder intervened and asked relief against Santiago Boney. From a judgment for Boney, intervener appeals. Affirmed.

JOHN D. W. VEEDER and ELMER E. VEEDER of Las Vegas, for appellant.

A finding based on substantial but conflicting evidence will not be disturbed on appeal.

Current v. Citizen's Bank of Aztec, 120 Pac. 307 (N. M.); Hagerman Irrigation Co. v. McMurry, 113 Pac. 823 (N. M.); Candelaria v. Miera, 84 Pac. 1020 (N. M.)

Also where the evidence was not taken before a trial judge, as by way of deposition or documents, this court, having the same opportunity for weighing its credibility, will weigh it.

Law v. N. M. Cent. R. R. Co., 142 Pac. (N. M.) 145; Gallup Electric Light Co. v. Pacific Imp. Co., 113 Pac. (N. M.) 848.

But there is absolutely no substantial evidence to sustain the findings of the trial court.

In this particular class of cases an opposite or interested party can recover only when his evidence is corroborated by some other material evidence.

Sec. 3021, C. L. 1897; Gildersleeve v. Atkinson, 27 Pac. (N. M.) 477; Johnston v. Baca, 85 Pac. (N. M.) 237; Childers v. Hubbell, 110 Pac. (N. M.) 1051.

If consequences of a record, so solemn as that of a court, can be escaped by a mere denial, then no title founded thereon is safe.

Bonnifield v. Thorp, 71 Fed. 924; Winters v. Means, 41 N. W. Rep. (Neb.) 157; Wheeler v. Cox et al., 8 N. W. Rep. 688; Gemmell v. Rice, 13 Minn. 400; Harshey v. Blackmarr et al., 20 Iowa, 161, (185.)

Under circumstances of this case appellee was charged with knowledge of condition of his title.

Hardt v. Heidweyer, 152 U. S. 547; Penn. Mutual Life Ins. Co. v. Austin, 168 U. S. 685; Commissioners v. C., R. I. & P. R. Co., 18 Fed. 209; Ware v. Galveston City Co., 146 U. S. 102; Barton v. Long, 14 Atl. 566; De Mares v. Gilpin, 24 Pac. 568.

First part of document governs in construing it.

Blackwell v. Blackwell, 32 S. E. 676.

The instrument stands as an absolute conveyance divested of any trust.

39 Cyc. 58, 59; Christian v. Highlands, 60 N. E. 266; Filkins v. Severin, 104 N. W. 346; Isaaca v. Emory, 1 Atl. 713.

As to effect of construction of an instrument given it by the parties.

Fraser v. State Savings Bank et al. (N. M.), 137 Pac. 592; Kamer v. Bryant et al., 46 S. W. Rep. 14; Dakin v. Savage, 51 N. E. Rep. 186; Huff et al. v. Miniard et al., 73 S. W. Rep. 1036; Mulford v. Le Franc, 26 Cal. 88; Bradford v. Cressey, 45 Maine, 9; Livingston v. Ten Broeck, 8 Am. Dec. 287.

Lack of acknowledgment of instrument can be taken advantage of only by someone connected with title.

Cheetham-Strode v. Blake, 142 Pac. (N. M.) 1130; Literer v. Huddleston, 52 S. W. 1003.

Question being simply as to existence and execution of a document, record thereof was admissible.

Baeder v. Jennings, 40 Fed. 199; McCarthy v. Johnson, 49 S. W. 1098; Freeman v. Wm. M. Rice Institute, 128 S. W. 629.

Pretended proceedings to quiet title were absolute nullity so far as heirs of Jesus Maria Garcia and appellant are concerned.

Ware v. Easton, 48 N. W. 775; Board Trustees of Town of Las Vegas v. Priest, 120 Pac. (N. M.) 894; Rodriguez et al. v. La Cueva Rancho Company, (N. M.) 134 Pac. 228; Gilbreath v. Teufel et al., 107 N. W. Rep. 49; Floto v. Floto, 72 N. E. Rep. 1092.

S. B. Davis and H. W. Clark of Las Vegas, for appellee.

The principles governing the doctrine of *res adjudicata* have been variously stated since first formulated in Duchess of Kingston case in 1776, but all statements agree that a final judgment must exist.

1 Van Fleet on Former Adjudication, sec. 1; Nash v. Hunt, 116 Mass. 237; Citizens' State Bank v. Stockslager, 96 N. W. 591; Gurnea v. Seeley, 66 Ill. 500; Saylor v. Hicks, 36 Pa. St. 392; Child v. Morgan, 51 Minn. 116, 52 N. W. 1127.

Appellant practically says that a defendant who is not a purchaser without notice cannot be heard to object to introduction of alleged conveyance, the execution of which has never been proved. See:

Hill v. Taylor, 77 Tex. 295, 14 S. W. 366; Wigmore on Ev., sec. 1649; Medler v. Albuquerque Hotel, etc., Co., 6 N. M. 331, 28 Pac. 512; National Folding, etc., Co. v. Dayton, etc., Co., 91 Fed. 822.

Sec. 2175, Code 1915, not invoked by appellant in trial court, and jurisdiction not being involved, he will not be permitted to raise question first time on appeal.

Romero v. Coleman, 11 N. M. 533, 70 Pac. 559; Di Palma v. Weinman, 13 N. M. 226, 82 Pac. 360; Chavez v. Lucero, 13 N. M. 368, 85 Pac. 233, 6 L. R. A. (N. S.) 793; Cucullu v. Emmerling, 22 How. 83; Baeder v. Jennings, 40 Fed. 199; McCarty et al. v. Johnson et al., (Tex. Civ. A.) 49 S. W. 1098; Freeman v. Wm. M. Rice Institute, (Tex. Civ. A.) 128 S. W. 629.

Evidence will not be weighed where findings are supported by substantial evidence.

Candelaria v. Miera, 13 N. M. 360, 84 Pac. 1020; Hagerman Irrigation Co. v. McMurry, 16 N. M. 172, 113 Pac. 823; Current et al. v. Citizen's Bank of Aztec et al., 16 N. M. 642, 120 Pac. 307.

Sec. 2175, Code 1915, has no application to this case.

Griffin v. Earle, 34 S. C. 246, 13 S. E. 473; Murphy v. Hindman, 58 Kans. 184, 48 Pac. 850.

If statute applies, testimony of Boney is corroborated.

See Wigmore on Ev., sec. 2065, for statute quoted something like ours; Radford v. McDonald, 18 Ont. App. 167; McDonald v. McKinnin, 26 Grant, 12; Tucker v. McMahon, 11 Ont. 718.

As to doctrine of laches, see:

O'Brien v. Wheelock, 184 U. S. 450; Ward v. Sherman, 192 U. S. 168; Griswold v. Hazard, 141 U. S. 260; Stern v. Page, 7 How. 819; McLean v. Fleming, 96 U. S. 245; Kirby v. Lake Shore, etc., R. Co., 120 U. S. 130; Townsend v. Vanderwerker, 160 U. S. 171.

## STATEMENT OF FACTS.

This cause is entitled "In the Matter of the Intervention of Elmer E. Veeder, Appellant, v. Santiago Boney, Appellee," and is a proceeding within a suit entitled "The Union Land & Grazing Co. et al. v. Carmen Arce et al.," which is number 632 on the civil docket of the district court of the Fourth Judicial District of the state of New Mexico, in and for the county of Mora. The last-named suit was a partition suit, filed for the purpose of ascertaining the owners of the Mora grant and of partitioning that property among them. Hereafter, for convenience and brevity, it will be referred to as the "principal suit," and for the same reasons that part of the principal suit now before the court on appeal will be referred to as the "intervention."

The issues in the intervention were formed in the following manner: On August 6, 1914, the appellant intervener filed in the principal suit his petition in intervention, in which he set up claim to an undivided one-twentieth of one-seventh-sixth interest in the Mora grant, and asked that Santiago Boney, appellee herein, be required to answer the allegations of the petition and set up whatever right or claim he had to the undivided interest described therein, and that that interest be adjudged to be in the intervener and appellant free and clear from any and all claims of the appellee. An order was entered, permitting the petition in intervention to be filed. On October 13, 1914, Santiago Boney, the appellee, filed his answer to the petition in intervention, in which he set up three defenses, two only of which need be considered, viz.: (1) A denial of appellant's title; and (2) title in himself in fee simple. The prayer of the answer asks that title to the undivided one-twentieth

of one-seventy-sixth interest be quieted in Santiago Boney as against the appellant, Elmer E. Veeder. To this answer the appellant filed a reply, denying that Boney had a fee-simple title to the interest involved.

At the trial of the suit on October 20, 1914, the appellant, having and assuming the burden of proof, offered the following evidence and testimony, with other evidence, not material in view of the findings by the trial court: (1) The bill of complaint in the principal suit. (2) Notice for service by publication in the principal suit. (3) Proof of publication of service in the principal suit. (4) Stipulation that Santiago Boney "inherited from Miguel Mascareñas, the fourth (fortieth) grantee in the Mora Grant, a one-twentieth of one-seventy-sixth interest in said grant. (5) Certified copy of the record of an instrument dated June 25, 1877, purporting to have been made by Santiago Boney and his wife to Pedro Valdez, for the interest involved herein. (6) Certified copy of writing on the instrument mentioned in item No. 5, purporting to convey the property described in the record of that instrument from Pedro Valdez to Pablo Valdez on July 3, 1877. This was excluded by the trial court. (7) Deed made by Pablo Valdez and his wife to Jesus M. Garcia, on January 8, 1894, purporting to convey the interest involved herein. (8) Stipulation that appellant, on December 2, 1911, at 10 o'clock a. m., had deeds from the heirs of Jesus Ma. Garcia for whatever interest they derived from Jesus Ma. Garcia, deceased, claiming under Santiago Boney.

The appellee's case, briefly and substantially stated, was as follows: (1) Testimony of Santiago Boney, in his own behalf, unequivocally denying that he ever signed the instrument described in item No. 5 above, denying that he ever signed any instrument affecting his interest in the Mora grant, and stating that he never knew of the existence of the record described in item 5 above (the certified copy thereof being marked plaintiff's "Exhibit No. 3") until he saw Messrs. Davis and Clark "about two years" prior to 1914. (2) Testimony of Feliciana

Jiminez de Boney, wife of Santiago Boney, denying that she ever signed the instrument of which Exhibit No. 3 purports to be a copy. (3) Testimony of Manuel Lopez, whose name appears on the record of the instrument mentioned in item No. 5 as a witness, stating that, to the best of his knowledge and belief, he never signed the instrument in question, or any other instrument with Telesfor Jiminez.

At this point the defendant and appellee rested his case, and the intervener and appellant offered rebuttal testimoney, not material in view of the findings.

On October 22, 1914, the trial court made seven formal findings of fact. It is only necessary to consider findings 4, 5, 6, and 7. The first three findings will be omitted. The findings are as follows:

"(4) That on and prior to the 25th day of June, 1877, the said Santiago Boney was the owner and had good title to an undivided one-fourth of one-fifth of one-seventy-sixth interest in the tract of land and real estate known as the Mora grant, the same being a portion of the interest of Miguel Mascareñas, one of the original grantees therein; (5) that the instrument of which Exhibit No. 3 introduced in the above entitled cause by the said intervener, Elmer E. Veeder, purports to be a copy, purporting to be a conveyance of the interest of the said Santiago Boney, in the said tract of land known as the Mora grant, to one Pedro Valdez, dated June 25, 1877, and recorded in Book 4, at pages 66, 67, and 68 of the records of Mora county, was not made, executed, or delivered by the said Santiago Boney or by his wife, Feliciana Jiminez, and that the said instrument was not signed by them or on their behalf; (6) that the said Santiago Boney is still the owner of the said undivided interest, free and clear from any claim or demand of the said intervener, Elmer E. Veeder; (7) that the said intervener, Elmer E. Veeder, has no right or title in or to the said 1-4 of 1-5 of 1-76th interest in the said Mora grant, or any portions thereof."

To the third finding of fact the appellant objected. To the fifth, sixth, and seventh findings appellant objected for the reason that such findings are contrary to the preponderance of the evidence and contrary to the weight of the evidence; there being in fact no evidence to support the finding, and Santiago Boney is barred and precluded by laches from setting up that defense at this time. The

objections were overruled, and judgment was entered for appellee, from which judgment this appeal is prosecuted.

## OPINION OF THE COURT.

ROBERTS, C. J. (after stating the facts as above.)— While appellant assigns as error the fact that the trial court refused to consider the master's report as an adjudication of Boney's rights, he does not mention or argue the point in his brief, and therefore, in view of the uniform practice of this court, he will be considered as having abandoned the alleged error. The first proposition which he discusses is the alleged error in excluding Exhibit No. 4, offered by him for the purpose of establishing his title to the interest in the Mora grant, which he claims. . That exhibit was a certified copy of a purported paper recorded in the deed records of Mora county July 3, 1877, and reads as follows:

"Know by the present: That I, Pedro Valdez, of the county of San Miguel and territory of New Mexico, on the 3d day of the month of July, A. D. 1877, transfer, convey and cede in favor of Pablo Valdez, all the right, title, dominion, action and portion which has been transferred to me in writing which precedes by Santiago Boney and Feliciana Jiminez, his wife, in the same manner and in the same form that the real property contained in the said writing is described, in order that the said Pablo Valdez may enjoy it for his heirs and assigns, forever.

"In witness whereof, I have placed my name and seal on this transfer on the day and month aforesaid.

Pedro Valdez     [L. S.]

"Recorded on the 3d day of July, A. D. 1877.

"Pedro Valdez, Clerk."

To the introduction of this exhibit the appellee objected because:

"It is unacknowledged, and therefore not entitled to record, and therefore that the record of it is not admissible. (2) That no proof of its execution has been offered to the court, and that, not being acknowledged, it does not prove itself.  *  *  *"

In the trial court, and in this court, appellant contends that such record was admissible on two grounds: First, appellee having parted with his interest in the land, by

the conveyance marked "Exhibit No. 3," he cannot be
heard to object to the introduction of Exhibit No. 4 on
any ground or for any reason; and, second, that it was
admissible as an ancient record copy. While the second
ground stated is not in exact accord with the statement
made by appellant in the trial court, we shall assume
that the record copy was offered as an ancient record
copy, because from the argument there advanced we infer
that such was the understanding of court and counsel.

[1] As to the first contention by appellant, it is suf-
ficient to say that a defendant, in a suit to quiet title,
is entitled to require the plaintiff to prove title by com-
petent evidence. Because a plaintiff may introduce in
evidence a deed, purporting to have been executed by the
defendant, does not require the defendant to sit silently
by and permit a plaintiff to introduce an inadmissible
document simply because that document purports to have
been made by a grantee of the defendant's grantee. Ap-
pellant sought to quiet his title to the property in dispute
as against the defendant. In order to do this the burden
was upon him to establish title in himself. This he at-
tempted to do by the introduction of the exhibit in ques-
tion. If it was not competent and legal evidence, the de-
fendant had the right to object to its introduction, re-
gardless of what the plaintiff may have theretofore shown
as to the condition of the title.

[2] Was the record admissible as an ancient record
copy? Appellee contends that because the instrument
was not acknowledged, as required by section 3943, C. L.
1897, which was in force at the time the deed was executed,
it was not entitled to record under section 4792, Code
1915, which was in force at the time the deed was re-
corded, and hence, not being entitled to record, such rec-
ord was not admissible in evidence. It may be conceded,
and properly so, that the record was not admissible under
the statute, as an official record, because not made in ac-
cordance with statutory provisions, and yet the question
still remains whether the ancient record copy serves as
sufficient evidence of genuineness to entitle it to be ad-

mitted in evidence as a circumstance tending to prove the actual execution and delivery of the paper of which it purports to be a copy. Where the alleged ancient original is lost, and an ancient purported copy is offered, made by a private hand, and the purported maker is unknown or deceased, and the copy comes free from suspicion and the fact is established that it has been in existence for more than 30 years, it may be received in evidence under the ancient document rule. Wigmore on Evidence, § 2143. Where the alleged ancient original is lost or for other sufficient reason cannot be produced at the trial, and a purporting official record is offered, made more than 30 years before, and certifying the deed's contents and execution, but inadmissible as an official record because the statute law relative to its execution or acknowledgment has not been complied with, we can conceive of no valid reason why the copy cannot properly be received in evidence, as a circumstance tending to show that the original, from which it was copied, at that time was in existence, and that it was executed by the party whose name is signed to it. The weight to be accorded to this circumstance, or link in the chain of evidence, is another matter, entirely divorced from the question of the admissibility of the evidence. Where the original title deed is lost, under which a party claims title to real estate, and it was executed more than 30 years before it is sought to establish title under it, presumably all the parties and witnesses to the transaction are dead, and the claimant is compelled to resort to circumstantial evidence to prove his chain of title. In order to establish the fact of title, under such conditions, the claimant is entitled to put in evidence every circumstance, properly admissible, which tends to show the making and delivery of the deed under or through which he claims. The fact that there has been recorded, in the deed records of a county, where the land is situate, a purported deed to the real estate, although such deed was not acknowledged so that it was entitled to record, more than 30 years before the copy is offered in evidence, is a strong circumstance tending to

establish the existence and validity of the original deed. This fact alone, however, would not be sufficient to establish title, but would require some other confirming circumstance, such, for example, as the continuous possession of the land or some other item of corroboration, which coupled with such ancient record copy, would be sufficient to produce in the mind proof of the fact that the original deed existed, and was executed by the grantor named therein.

The failure, upon the part of some of the courts and text-writers to distinguish between the admissibility and the weight of such evidence has led to much of the confusion and uncertainty which exists in this regard. Without attempting to quote from the text-writers or authorities, we cite the following, where the question will be found considered and the divergent views presented: Wigmore on Evidence, vol. 3, § 2143; Elliott on Evidence, vol. 2, § 1334; Ency. of Evidence, vol. 1, p. 881; Van Gunden v. Virginia Coal & Iron Co., 52 Fed. 838, 3 C. C. A. 294; Shifflet v. Morelle, 68 Tex. 382, 4 S. W. 843; Belcher v. Fox, 60 Tex. 527; Brown v. Simpson's Heirs, 67 Tex. 225, 2 S. W. 644; Trammell v. Thurmond, 17 Ark. 203; Gibson v. Poor, 21 N. H. (1 Foster) 440, 53 Am. Dec. 216; Brown v. Edson, 23 Vt. 435; Appleton v. Edson, 8 Vt. 239; Stokes v. Dawes, 4 Mason, 268, Fed. Cas. No. 13,477; Holmes v. Coryell, 58 Tex. 680; Boykin & Lang v. Wright, 11 La. Ann. 531; Jones v. Morgan, 13 Ga. 515; McCleery v. Lewis, 104 Me. 33, 70 Atl. 540, 19 L. R. A. (N. S.) 438.

Appellant cites the cases of Baeder v. Jennings (C. C.) 40 Fed. 199, McCarty v. Johnson, 20 Tex. Civ. App. 184, 49 S. W. 1098, and Freeman v. Wm. M. Rice Institute (Tex. Civ. App.) 128 S. W. 629. In the first two cases, however, the question of the admissibility of the copies of the records in evidence, divorced from the question of possession, was not involved, for in both cases possession under the supposed deeds was shown. In the Freeman case the clerk who copied the deed into the record testified as a witness in the case.

Appellee cites the case of Heintz v. Thayer, 92 Tex. 658, 50 S. W. 929, 51 S. W. 640, as establishing the inadmissibility of the proffered copy in this case. That case, however, does not discuss the ancient record copy theory, but turns upon the statutes authorizing the recording of conveyances.

In the case of Schultz v. Tonty Lumber Co., 36 Tex. Civ. App. 448, 82 S. W. 353, the court said, citing the Heintz Case:

"Neither the purported transfer of the patent nor the conveyance from Lang to Sands, before set out, is authenticated for record in accordance with the statutes in force at the time they purport to have been executed, and therefore the transcribing of these instruments upon the record book did not make them legal records sufficient in themselves to prove the execution of the original instruments of which they purport to be copies. Pasch. Dig., arts. 5007, 5008; McDaniel v. Needham, 61 Tex. 271; Heintz v. Thayer, 92 Tex. 658 [50 S. W. 929, 51 S. W. 640]; Huff v. Webb, 64 Tex. 284. It is well settled, however, that the execution of, a lost deed may be proved by circumstances. Bounds v. Little, 75 Tex. 316 [12 S. W. 1109]; Crain v. Huntington, 81 Tex. 614 [17 S. W. 243]; McCarty v. Johnson, 20 Tex. Civ. App. 184, 49 S. W. 1098. In the case last cited this court held, in a well-considered opinion by Justice Williams, that the record of a deed improperly authenticated for registration was admissible in evidence as a circumstance tending to prove the execution of a deed claimed to have been lost, and of which the record purported to be a copy. Under this decision the record in question was properly admitted in evidence, but we do not think this record, considered in connection with the other evidence in the case, is sufficient to show the execution of the purported conveyance of the land to Sands. The only circumstances shown by the evidence, in addition to the illegal record, which tend to support the conclusion that such conveyance was made are the payment of taxes by Sands for two years, and the failure of Lang to exercise any act of ownership over the land, or assert any claim thereto."

In the case of Jones v. Neal, 44 Tex. Civ. App. 412, 98 S. W. 417, the court said:

"The propriety of the introduction of the record book of deeds as a circumstance to show the execution and contents of the lost deeds is sustained by ample authority" (citing a number of cases, including the Heintz Case).

In the case of Townsend v. Estate of Downer, 32 Vt. 183, will be found an exhaustive discussion of the rule relative to the admissibility of an ancient recorded copy, although the court there did not discuss the admissibility of such a record divorced from the question of possession.

It is our view that the court should have admitted the record copy. No question was raised in the trial court as to the proffer of a certified copy, rather than the original record, but appellee assumed that if the record itself was admissible in evidence the certified copy would be, or he did not elect to raise the question because of the fact that the record was available as evidence and could have been produced. What we have heretofore said is based on the assumption that the record itself was offered in evidence, upon proper proof to establish it as such.

[3] Assuming, however, that the record should have been received in evidence, we are not necessarily required to reverse the judgment, for, if the finding by the court that appellee did not sign the purported deed to Pedro Valdez, dated June 25, 1877, is supported by substantial legal evidence sufficient to warrant the finding, the judgment must be affirmed, because, if it be true that appellee's name was forged to such deed, he would still be the owner of the interest attempted therein to be conveyed, and the judgment quieting his title thereto was proper.

Appellant attacks this finding on the ground, that under section 2175, Code 1915, appellee's grantee being dead, he was not entitled to recover on his own uncorroborated evidence, and that his evidence was not corroborated. This statute reads as follows:

"In a suit by or against the heirs, executors, administrators or assigns of a deceased person, an opposite or interested party to the suit shall not obtain a verdict, judgment or decision therein, on his own evidence, in respect of any matter occurring before the death of the deceased person, unless such evidence is corroborated by some other material evidence."

Appellant contends that this point was not raised in the trial court, but, passing this question, we will proceed to a consideration of the point on its merits.

Boney, the appellee, testified that he did not sign the purported deed, and never authorized any other person to sign his name thereto. In brief, he testified to a state of facts which showed that his name had been forged to the instrument. In addition to being signed by Boney, the deed was also signed by Boney's wife, although her signature thereto was not required under the then existing law of the territory. It was also witnessed by the purported signature of two witnesses, although the law did not so require. Mrs. Boney testified as a witness in the case, and stated that she did not sign the purported deed, or authorize any person to affix her signature thereto. One of the subscribing witnesses was produced, and testified as a witness that he had no recollection of ever having signed the deed as a witness; that to the best of his recollection he had not done so, but said that, owing to the lapse of time, he could not swear positively that he had not so signed. Appellee contends that, assuming the testimony of Boney required corroboration, the above testimony fulfilled the requirement of the law and warranted the finding. Appellant argues that as neither Mrs. Boney nor the witnesses were required to sign the deed, in order to render it valid, their evidence to the effect that their signatures were forged to the instrument affords no corroboration of Boney's testimony that his signature was also forged. In considering the question presented, we must assume that the trial court was justified in giving full credit to Boney's testimony, for that court heard him testify, had full opportunity to observe his manner and demeanor on the stand, and was better able to judge of the truth or falsity of his testimony than could this court from the record. This being true, the only question that remains for this court to pass upon is whether the evidence of Mrs. Boney and the witness Lopez afford such corroboration as will satisfy the statute quoted supra.

So far as a rather close search has indicated, the statute involved here is unique in the United States, and, instead of being wholly exclusionary of the testimony of an opposite party or interested witness, as is the case in nearly

all of the states, it is quantitative in its nature, and provides that no decision shall be rendered in favor of an interested witness unless his testimony shall be corroborated by "some other material evidence." While we have found no statute in the United States like the one under discussion, an Ontario statute, quoted by Wigmore, Evidence, § 2065, note, is almost identical. It reads that in an action—

"by or against the heirs, executors, administrators, or assigns of a deceased person, an opposite or interested party to the action shall not obtain a verdict, judgment, or decision therein, on his own evidence, in respect of any matter occurring before the death of the deceased person, unless such evidence is corroborated by some other material evidence."

The Ontario laws not being accessible, we cannot give the date of the original enactment of this particular statute, but we believe, for reasons which will appear in connection with a discussion of some of the Canadian cases, and particularly with reference to the date of the decision in each of such cases, that it has been statute law in Ontario since September, 1878, at the latest.

The case of Radford v. McDonald, 18 Ont. App. 167 (1891), was a case brought by an architect to recover from the executrix of a deceased person the sum of $120, as commission for the preparation of plans and estimates for a dwelling house to cost $12,000, under a contract made with the deceased in his lifetime, as the plaintiff alleged. The making of the contract was testified to by the plaintiff, and the only question in the case was "whether his evidence was sufficiently corroborated to justify a recovery." The corroborative evidence consisted of two documents, almost wholly in the handwriting of the deceased. One was a list of rooms, with the heading, "Limit, all extras, $12,000.00." The other was a sketch, showing a certain lot with the words, "G. McDonald's lot," written on it. It was proved that the deceased did own such a lot. The court held that the evidence of the plaintiff was—

sufficiently corroborated to support a verdict from a jury that the plaintiff's proof of his claim was true."

The interesting part of this case consists of statements and quotations by the court as to the meaning of "corroborative evidence." The following are examples:

"It has been well put, by more than one of our own judges, that evidence that strengthened the probability of the plaintiff's evidence being true was corroborative evidence.

"Armour, C. J., in Parker v. Parker, 32 C. P. 113, reviews the authorities. He quotes, from Sugden v. Lord St. Leonards, 1 P. D. 154, Sir James Hannen's explanation of what is corroboration: 'It is sufficient if I find that independent support is given to Miss Sugden's statements in so many instances that it raises in my mind the conviction that she is to be depended on even in those matters in which I do not find corroboration elsewhere.'

"In Cole v. Manning, 2 Q. B. D. 611, the learned judges considered the evidence adduced in a bastardy case to be sufficient, where, in my judgment, the corroboration was far weaker than in the case before us.

"The statute seems undistinguishable from ours in its purport. Lord Field (then in the Queen's Bench) says: 'Suppose the appellant and the respondent had been seen walking together in a lonely spot, such as might be convenient for the commission of immoral acts; certainly that would be a material corroboration of the appellant's evidence as to the paternity of her illegitimate child.'"

The case of McDonald v. McKinnon, 26 Grant, 12, is a chancery case decided in September, 1878, in which the court says:

"With regard to corroborative evidence under the statute, I do not agree that the evidence of a party claiming must be corroborated in every particular. If it were so, it would be requiring the party to establish his whole case by independent evidence."

In Tucker v. McMahon et al., 11 Ont. 718 (1886), the issue was whether the plaintiff, after the death of the decedent's wife, lived with him as a servant, or continued to live with him as a member of his family. Plaintiff testified that she lived with the deceased as a servant, and that he promised to pay her wages. Her son testified that the deceased stated to him, "She shall be handsomely paid." Her son-in-law testified that the deceased stated to him that "he would pay her well for her services." The court found that the corroboration was not sufficient, and, in reaching a decision, said:

"In order to satisfy the staute, the corroborative evidence must be such as would tend to prove what she testified to as being the ground of her claim.   *   *   *

"They [the statements above set out] are, in my opinion, quite as consistent with the view that she continued to live with the testator after his wife's death, in precisely the same relation that she lived with him before that event, that is, as a member of his family, and not as a hired servant, and quite as consistent with the view that the relation then changed and became that of a hired servant, instead of a member of the family merely.   *   *   *

"The statements made by the testator were undoubtedly indicative of an intention on his part to pay the plaintiff for services, but they afforded no evidence of the motive of that intention, and were quite as consistent with an intention moved by moral obligation as with an intention moved by legal obligation."

In view of the state of the testimony, admitting that the signature of Boney's wife and the signature of the attesting witnesses were not essential to the validity of the instrument, is the testimony of Boney corroborated by "some other material evidence?"

Let us reconstruct the case on another theory. Suppose that the appellant had offered the instrument in question, and that Boney had denied that he signed it; that then, on rebuttal, the appellant had called two witnesses, Boney's wife and Manuel Lopez; the testimony of the former being that she signed her name to the original of the instrument, and the testimony of the latter being that he signed his name to it. Would the testimony of Boney's wife and of Lopez tend to prove that Boney had signed the instrument, notwithstanding his denial? Would their testimony be persuasive on the mind of the court? If persuasive at all, would it be legitimately so? We believe that it would; and we think that the court would have admitted it over objection, and would have been correct in so doing. Now take the present case. Boney says he did not sign the instrument. His wife and Lopez testify that neither of them signed it. Appellant complains because neither of these two witnesses testified that Boney did not sign it, or that Boney's signature was not on the instrument. Such omission on the part of the witnesses is, we believe, the strongest kind of an indication

of the truth of their statements. If they had said they did not sign, and that Santiago did not sign, in the latter statement they would have been testifying as to something about which they could, by no possibility, know anything. It was impossible, in the very nature of the case, that these two witnesses, denying, as they did, that they signed the instrument, could know anything further about the matter.

The real question here is: Is the instrument in question a genuine instrument or is it a forgery? It is quite true that the original of this exhibit, if any existed, did not require the signature of Boney's wife, and that no witnesses were necessary. However, the fact is that signatures purporting to be those of the persons named on the exhibit are claimed to have been on the original. If they were genuine signatures, the fact that they were there is very strong evidence against Boney; and they would constitute a very sharp blade with which the appellant could vigorously and successfully strike at Boney's testimony. Our view is that this blade has two edges, the one as keen and sharp as the other.

Moore on Facts, § 1145, says:

"Corroborative evidence is that which strengthens and renders more probable the testimony which it is adduced to support."

At section 1147, the same author says:

"Corroborating evidence may come as effectively from facts and circumstances as from the mouth of a witness giving direct testimony of the fact sought to be substantiated."

Here the fact that a copy of a deed is offered in evidence, which has upon it evidence of the forgery of the names of persons, not required to sign the same to make it valid and effectual, it is true, but which evidently the party making and effecting the instrument deemed essential, is a strong circumstance tending to show that the instrument was spurious, and to discredit the fact that Boney had signed the deed. Here we might mention the fact, incidentally, that the acknowledgment to the deed

was taken by Pablo Valdez, who was the probate clerk and ex-officio recorder of Mora county, and that in a short time after the deed was supposed to have been executed Pedro Valdez is shown by the record to have conveyed to Pablo Valdez the same interest. Both the original deeds are lost or destroyed.

Moore on Facts, § 1147, says:

"Every case must depend upon its own special circumstances in determining whether there is corroboration or not."

Here we have a state of facts which places upon this purported deed the indelible evidence of fraud and forgery, and it is but a step in the process of reasoning to conclude that, if the wife's name is a forgery and the witness' name was forged, Boney told the truth when he said that his name was forged to the deed.

This statute has been before the territorial and state Supreme Court several times, and has been construed. The latest case is that of National Rubber Supply Co. v. Oleson & Exter, 151 Pac. 694, where the prior cases are collected. In that case we said:

"In order to satisfy the statute, the corroborating evidence must be such as would, standing alone and unsupported by the evidence of the claimant, tend to prove the essential allegation or issue raised by the pleadings."

In this case we believe that the proven forgery of the names of the wife and witness, standing alone, tends to discredit the whole deel, and furnish independent support of the fact that Boney did not sign the deed. This being true, Boney's testimony was sufficiently corroborated, under the statute, to warrant the judgment.

This being true, the finding is supported by substantial evidence, and warranted the judgment, and it will not be necessary to consider the remaining question raised and discussed by counsel. The judgment of the lower court will be affirmed; and it is so ordered.

HANNA and PARKER, J.J., concur.