No. 2163.

D. S. BROWN ET AL. *v.* H. S. SIMPSON'S HEIRS ET AL.

1. COLONIZATION LAWS—DEED.—A written instrument purporting to convey land to which the colonist claimed title as a settler under the laws in force before the adoption of the Constitution of the Republic of Texas, if executed before the extension of final title from the government, was a nullity.

2. SALE—COLONIZATION LAWS—POWERS.—If such instrument purported to be a power of attorney, and authorized the attorney to make conveyance to a designated party as soon as the title to the settler's land was procured, and gave power to substitute another attorney, waiving all laws that might affect its validity, and declaring that it should be irrevocable, it evidenced a contract of sale, and not a mere power of sale.

3. CASES REVIEWED.—Cook v. Lindsay, 57 Texas, 67, reviewed.

4. COLONIZATION LAWS CONSTRUED.—The colonization laws of Mexico in force prior to the revolution of 1836 reviewed and discussed, and the conclusion announced that native Mexicans were not exempt as settlers in colonies, from the restriction imposed upon the alienation before the issuance of final title of lands claimed by them.

15 — TEX. APP. LXVII.

5. ANCIENT INSTRUMENT—CERTIFIED COPIES.—When the affidavit of the loss of a deed is filed in a suit through which the party claims title, a certified copy from the record showing that the deed had been recorded thirty years, with strong corroborating circumstances of its athenticity, will authorize the introduction of such copy as a copy of an ancient instrument, though an affidavit has been filed impeaching the genuineness of the original. Otherwise, if there be no authentic entry on the record or evidence showing the date of registration.

APPEAL from Hardin. Tried below before the Hon. Edwin Hobby.

*Thomas J. Russell*, for appellants, on his proposition that the contract of sale, or power of attorney, dated October 25, 1835, was inadmissible as an ancient instrument, because the original was not offered, but only a copy from the county clerk's office of Nacogdoches county, cited Andrews v. Marshall, 26 Texas, 212; Paschal v. Perez, 7 Texas, 348; Broxon v. McDougal, 63 Texas, 193.

The original contract of sale, dated October 25, 1835, is not properly an archive of the county clerk's office of Nacogdoches county, because it was not executed as an authentic act before any public officer. (Andrews v. Marshall, 26 Texas, 212; Paschal v. Perez, 7 Texas, 348; Grimes v. Bastrop, 26 Texas, 310; Jones v. Montes, 15 Texas, 351; York v. Gregg, 9 Texas, 85; Paschal's Digest, note 250; Smith v. Townsend, Dallam, 570.)

There was no evidence upon the face of the instrument to show when it was filed in the county clerk's office. (Revised Statutes, Article 2256; Provisional Government of Texas, Article 14.)

The contract of sale, by Francisco Arreola to J. K. Allen and W. G. Logan, dated October 25, 1835, is null and void upon the face of it in this, that it was made and executed before the final title to the land issued. The instrument is dated October 25, 1835, and the final title issued November 5, 1835. (Act of Coahuila and Texas, April 28, 1832, Decree No. 90, section 19; Act March 26, 1834, Decree No. 272, section 36; Hunt's Heirs v. Robins's Heirs, 1 Texas, 784, and the authorities cited in opinion.) Contract governed by law then in force. (Means v. Robinson, 7 Texas, 502; Spillars v. Clapp, 3 Texas, 498; Atkinson v. Bell, 18 Texas, 474; Clay v. Clay, 26 Texas, 24; Holmes v. Johns, 56 Texas, 49; Grau v. Wallis, 60 Texas, 350.)

The instrument dated October 25, 1835, and signed by Fran-

cisco Arreola, is to all intents and purposes a contract of sale of the land, and the authority given to Henry Raguet was only to make the deed after the title issued, and should be treated as a contract of sale, and as such is an illegal contract made in violation of the statute law of the land, and null and void. (Cases cited in opinion of Hunt's Heirs v. Robins's Heirs, 1 Texas, 784; Clay v. Cook, 16 Texas, 70; Bank of United States v. Owens, 2 Peters, 538; Spalding v. Preston, 21 Vermont, 9; Kennedy v. Cochran, 65 Maine, 594; Brown v. Brown, 34 Barbour, 231; Holt v. Green, 73 Pennsylvania, 198; 7 Wait's Actions and Defenses, 64; Chitty's Contracts, 601; Benjamin on Sales, sections 503 to 30.)

*P. A. Work,* for appellant Brown, that the court erred in admitting in evidence the power of attorney, cited Act of Coahuila and Texas, April 28, 1832, Decree No. 90; Act of Coahuila and Texas, March 26, 1834, Decree No. 272, section 86; Hunt's Heirs v. Robins's Heirs, 1 Texas, 784, and authorities cited in opinion; Means v. Robinson, 7 Texas, 502; Spillars v. Clapp, 3 Texas, 498; Atkinson v. Bell, 18 Texas, 474; Clay v. Clay, 16 Texas, 24; Holmes v. Johns, 56 Texas, 49; Grau v. Wallis, 60 Texas, 350; Clay v. Cook, 16 Texas, 70.

*O'Brien & John,* for appellees, as to settlers who were native Mexicans, cited Manchaca v. Field, 62 Texas, 135; Martin v. Parker, 26 Texas, 255; Clay v. Holbert, 14 Texas, 139; Cowan v. Williams, 49 Texas, 391; Wilcox v. Chambers, 26 Texas, 188; Ryan v. Jackson, 11 Texas, 391, and Fulton v. Duncan, 18 Texas, 34.

That the charge of the court gave the law, and the verdict should not be disturbed, they cited Willis v. Bullitt, 22 Texas, 331; Robinson v. Varnell, 16 Texas, 387; Weisiger v. Chisholm, 22 Texas, 672; Mercer v. Hall, 2 Texas, 285; Farquhar v. Dallas, 20 Texas, 200; Thompson v. Payne, 21 Texas, 625; Linn v. Wright, 18 Texas, 317; Bast v. Alford, 20 Texas, 229; Grumbles v. Grumbles, 17 Texas, 476; McCown v. Schrimpf, 21 Texas, 26; Town of Refugio v. Burne et al., 25 Texas, 197; Gray v. Burke, 19 Texas, 232; Warren v. Smith, 24 Texas, 487; Smithwick v. Andrews, 24 Texas, 494; Garrett v. Chambliss, Id., 619.

GAINES, ASSOCIATE JUSTICE.    This is an action of trespass to try title brought originally by Henry E. Simpson on the ninth of March, 1880, against R. M. Chance, James Spillars and

D. S. Brown, to recover a league of land lying in Hardin county, granted to Francisco Arreola by Special Commissioner Charles S. Taylor, in the year 1835.

The evidence shows that plaintiff claimed under a deed purporting to have been executed by the original grantee to one Alexander in the year 1853. John A. Christie, who also claimed the land under a deed made by Arreola, by his attorney in fact Henry Raguet, to J. R. Allen and W. G. Logan, in the year 1835, purchased the land in controversy from plaintiff and took his deed therefor dated October 16, 1880; and subsequently in the year 1883, intervened in the suit and asked to be made a party plaintiff, and was so treated in the subsequent proceedings. Guadalupe Arreola also intervened claiming the land as the heir of the original grantee. James Cox and wife also intervened setting up title by the statute of limitations, to a portion of the land sued for. The defendants pleaded not guilty and each of them set up title to a part of the premises in controversy by statute of limitations. The plaintiff died while the suit was pending and his heirs appeared and made themselves parties plaintiff.

The cause was tried before a jury and resulted in a verdict and judgment for plaintiffs for the use of intervenor Christie against all the defendants and all the other intervenors. The parties against whom the judgment was rendered have all appealed to this court.

It is assigned that the court erred in admitting in evidence over the objection of appellants a power of attorney from Francisco Arreola to Henry Raguet, dated October 25, 1835; and the deed made to Allen and Logan by virtue of that power of attorney, dated March 28, 1836.

The objection is based upon the ground that the instrument dated October 25, 1835, was executed before the issue of the final title, and is therefore void. That the attempted conveyance of his land by a settler under the colonization laws existing before the date of the Constitution of the Republic, if made before the final title was extended, was in contravention of the law and therefore a nullity, is settled by numerous decisions of this court. (Holmes v. Johns, 56 Texas, 49; Atkinson v. Ball, 18 Texas, 478; Williams v. Chandler, 25 Texas, 4; Burleson v. Burleson, 11 Texas, 2; Hunt's Heirs v. Robins's Heirs, 3 Texas, 396; Cook v. Lindsay, 57 Texas, 67.)

In the case last cited, an instrument which purported to be a

power of attorney, but which authorized the attorney to make a conveyance to a certain person named "as soon as the title is procured," and gave power to substitute other attorneys, waived all laws that might affect its validity and declared that it should be irrevocable, was held a contract of sale and not a mere power of sale.

The provisions of the power of attorney in the case before us are substantially the same. It authorizes the attorney to procure the title to a league and labor of land for which the commissioner Taylor had granted the constituent an order of survey; and when the title was obtained, to convey the land to Logan and Allen. It also declares that the powers "conceded" by it shall be irrevocable, and closes with the following words: "Hereby waiving all laws that may be in my favor at the time."

The only difference between this instrument and that construed in Cook v. Lindsay is that the latter gave the power of substitution, and directed that the attorney should convey to "Blake or to any person he may choose;" and these differences, in our opinion, do not affect the question before us. In that case, the court say: "From the recitals, it is apparent that the effect of this instrument, if valid, was to place the league and labor which Robertson expected to receive as a colonist beyond his own control. * * * The clause making the instrument irrevocable also indicates the existence of a consideration and the other elements of a contract." The same is to be said of the pretended power of attorney in this case.

This is conclusive of the question of the validity of the power of attorney admitted in evidence by the court, and of the deed made under it, unless as is insisted by counsel for appellees, the inhibition of a sale before the issuance of a title did not apply to native Mexicans. In his application, Arreola describes himself as a "native of Mexico," and the title must be considered as a grant to a native of the country.

The diligent research of counsel for appellees, fails to show, as they frankly admit, any decisions in our courts upon this question. The grant in this case discloses upon its face that it was made by virtue of the authority conferred upon the special commissioner by Article 32 of the law of the twenty-sixth of March, 1834. (1 Pas. Dig. Laws, art. 730.) That article was evidently intended to restore to the inhabitants of the frontier of Nacogdoches and those residing east of Austin's colonies,

the right conferred by decree number sixteen of the twenty-fourth of March, 1825 (Pas. Dig. Laws, art. 578), which had been repealed by Article 38 of the law of April 27, 1832. (Pas. Dig. Laws, art. 706.) The repealed law extended to families and single men who had emigrated at their own expense and who had annexed themselves to any of the new settlements, the rights which had been granted to settlers who had been brought in by the contractors.

The twenty-fifth article of the same law of the twenty-fourth of March, 1835, provided that "It shall be understood that the new settlers who shall not within six years from the date of their possession have cultivated or occupied agreeably to their class the lands that shall be granted to them, have renounced the same." (Pas. Dig. Laws, art. 588.) And the succeeding article declared that the settle·s other than "the contractors and the military" "shall be authorized to aleniate their lands when they have completed the cultivation thereof, and not before." (Pas. Dig. Laws, art. 589.) This was, however, amended by Article 36 of the law of March 26, 1834, which authorized the settlers to sell, who had received titles to their land.

In neither of these provisions is there any distinction made between foreigners and natives; but in Article 19 of the law of the twenty-eighth of April, 1832, it is expressed enacted that "no new settler, Mexican or foreigner, shall, under any title or pretense, sell or aleniate the land or water that falls to his share until six years from the time of taking his possession." (Pas. Dig. Laws, art. 687.) The amendment referred to above applies, however, to this provision as well as to the corresponding enactment in the law of 1825. There are several provisions in the colonization laws of Mexico and of Coahuila and Texas in force in this State while it was under the dominion of the Mexican government, which extend especial favor to native Mexicans, but we have not found any which removes the restrictions upon aleniation by settlers before the grant of the final title.

It follows from what we have said that we deem the power of attorney from Arreola to Raguet, and the deed made under it, void, and that the court erred in admitting them in evidence, and also in charging the jury that they and the conveyances under them showed title in the land to plaintiffs, unless defendants had shown title by limitations.

This disposes of the title under which the intervening plaintiff Christie claimed before his purchase from the original plaintiff.

The latter, whose title Christie bought during the pendency of the suit and before he intervened, claimed under a deed from the original grantee, Arreola, made in 1853, to one Alexander, and by mesne conveyances from Alexander down to himself. There was no question raised as to any of these conveyances in the court below, except as to that above mentioned. An affidavit of the loss of the original was made, and a certified copy from the records of Hardin county was filed among the papers of the case long before the trial. No affidavit impeaching the execution of this deed is set out in the record; but the bill of exceptions shows that the copy was admitted over defendant's and intervenor's objection after such affidavit was filed.

The statement of facts discloses that the copy was admitted as a copy of an ancient document. In the case of Holmes v. Coryell, 58 Texas, 688, it is held that when the affidavit of the loss of a deed thirty years old is filed, a certified copy from a record of like age, with strong corroborating circumstances, is admissible in evidence, notwithstanding an affidavit has been filed impeaching the genuineness of the original. The court say: "The record in 1843 evidences with more certainty than the original would that the deed was more than thirty years old." And it may be added that a record of an instrument properly registered for thirty years, having been made upon acknowledgment of the grantor, or by proof of one of the subscribing witnesses, before an officer charged with the duty of taking such acknowledgment or proof, would seem to possess a higher degree of authenticity than an original deed offered as an ancient document at common law, upon which no such acknowledgment or proof appeared. However that may be, when an affidavit is filed that the original can not be produced, the statute makes the duly recorded copy evidence in cases in which the original can be produced. (Rev. Stat., art. 2257.)

But in this case the certificate of the clerk to the copy from the records shows that the date of the registration of the instrument does not appear; and no proof was introduced to show when the record was made. Under these facts, we think it was error to admit the certified copy. If the record had been shown by any competent evidence to have been made more than thirty years before the trial, then there would have been evidence of an ancient document, with the corroborative proof derived from the certificate of acknowledgment; and we would have had a case as we think covered by the statute cited. But

to hold that a recent record, because it purports to be of an instrument more than thirty years old, is evidence of the execution of a deed, the genuineness of which is impeached, would be to open the door to fraud and forgery. In order for the copy to take the place of the original when the latter is lost, the registration must be shown to be ancient, just as the deed must appear to be ancient, where the deed itself is offered.

Because it was not shown that the record of the deed was made thirty years before the trial, we think it was error to admit the certified copy.

What we have already said renders it unnecessary to pass upon many other questions presented by the record. It is proper, however, that we should consider the errors assigned upon the charges given and refused in relation to the pleas of limitation. This may be done in a very general way. It would seem that the evidence was sufficient to show occupancy by each of defendants and by the intervenors Cox and wife, and those under whom they respectively claimed for a period of ten years before the bringing of the suit. But no one of the defendants or of said intervenors had himself been in possession, claiming the land for that period of time. None of them produced any written evidence of title whatever.

It did appear, however, that those who held previous possession of the land did not claim it, but only the improvements respectively occupied by them, and that when they sold to defendants and intervenor Cox respectively, they sold only the improvements, and that these sales were all by parol. Under this testimony we think the court neither erred in its charge upon the statute of limitation or in refusing the charges requested.

For the errors which have been pointed out the judgment is reversed and the cause remanded.

*Reversed and remanded.*

Opinion delivered January 14, 1887.