**HOUSTON OIL CO. OF TEXAS et al. v. McCARTHY et al. (No. 277-3513.)**

(Commission of Appeals of Texas, Section B. Dec. 6, 1922.)

**1. Judgment ⬅578—Where motion for new trial pending, judgment not admissible as evidence.**

A judgment is deprived of that finality necessary to make it admissible in evidence or the basis of a plea in bar in support of the right or defense declared by it so long as a motion for new trial is pending under Rev. St. 1911, art. 2026, authorizing new trial in cases in which judgment has been rendered on service of process by publication, where defendant has not appeared in person or by attorney of his own selection.

**2. Judgment ⬅325(1)—Attorney ad litem for unknown defendants may apply for new trial after adjournment of term.**

An attorney ad litem for defendants in trespass to try title served by publication may apply for new trial after adjournment of the term on behalf of the unknown parties whom he represents, notwithstanding Rev. St. 1911, art. 2026, providing for new trial on judgment after service of publication on application of "defendant" for good cause shown.

**3. Limitation of actions ⬅197(1)—Residence in foreign country held to avoid limitations under statute.**

In trespass to try title, evidence *held* to require a finding that one of plaintiff's remote

grantors had acquired a business residence in Mexico so as to avoid limitations under Rev. St. 1911, art. 5702.

**4. Adverse possession ⊜➝104—Where defective or invalid grant shown, another grant will not be presumed.**

Presumption of a grant from lapse of time and assertion of ownership does not arise where all the circumstances are consistent with the nonexistence of the grant, and, where a grant defective or invalid is shown, another and different grant will not be presumed.

**5. Trespass to try-title ⊜➝38(3)—Presumption from prior possession negatived by showing possession under void deed.**

Proof that plaintiffs' possession, if any, was under a void deed, negatived any presumption of title from plaintiffs' showing of prior possession.

Error to Court of Civil Appeals of Ninth Supreme Judicial District.

Trespass to try title by Edward McCarthy and others against the Houston Oil Company of, Texas and others. Judgment for defendants was reversed by the Court of Civil Appeals and the cause remanded (221 S. W. 307), and defendants bring error. Judgment of Court of Civil Appeals reversed, and that of trial court affirmed.

Kennerly, Williams, Lee & Hill, of Houston, H. O. Head, of Sherman, Minor & Minor and Geo. D. Anderson, all of Beaumont, and A. R. & W. P. Hamblen, of Houston, for plaintiffs in error.

Thos. J. Baten, and W. D. Gordon, both of Beaumont, for defendants in error.

McCLENDON, P. J. This was an action in trespass to try title by which Edward McCarthy et al., who were plaintiffs below, sought to recover the Eduardo Arriola league of land in Hardin county from two sets of defendants, the Houston Oil Company et al., and W. A. Billingsley et al. The trial court rendered judgment in favor of defendants upon a directed verdict, which judgment was reversed by the Court of Civil Appeals and the cause remanded for a new trial. 221 S. W. 307.

The land in controversy was granted to Eduardo Arriloa on November 6, 1835. Plaintiffs deraign their title under a deed executed by Henry Raguet, attorney in fact for Eduardo Arriola, and a regular chain of transfers thereunder. The power of attorney under which Raguet acted was executed October 25, 1835, which was prior to the extension of the grant. It is conceded that this power of attorney and deed thereunder were void under the authority of Brown v. Simpson's Heirs, 67 Tex. 225, 2 S. W. 644. Plaintiffs nevertheless assert title or prima facie evidence of title in themselves, rendering erroneous the action of the trial court in directing a verdict against them, under each of the following showings:

(1) Judgment of the Seventy-Fifth judicial district court of Hardin county in favor of G. C. Clough against the unknown heirs of Eduardo Arriola et al.

(2) Limitation under the ten years' statute by virtue of the possession of one Henry Coplin as tenant for A. C. Allen between the years 1846 and 1858.

(3) Presumption of a deed from Eduardo Arriola or his heirs vesting title in plaintiffs or those under whom they claim.

(4) Prior possession.

For the purposes of this case, as we view it, it is not necessary to set out the title of defendants further than to quote the following statement from the opinion of the Court of Civil Appeals:

"The defendant Houston Oil Company of Texas and those claiming under it deraign their title through a chain of transfers originating with the heirs of an Eduardo Arriola, who at one time lived in Grimes county, Tex., and Billingsley and those associated with him deraign their title through Enrique Arriola, by deed dated the 12th day of December, 1908, wherein he recites that he is 'Enrique Arriola of the state of Zacatecos, republic of Mexico, son and sole heir at law of Eduardo Arriola, deceased.'"

The judgment in the case of Clough v. Unknown Heirs of Eduardo Arriola et al. was rendered February 4, 1918. In that case E. M. Chester was appointed by the court as attorney ad litem for the defendants served by publication. On April 17, 1919, after adjournment of the term of court at which this judgment was rendered, Chester filed an application or motion for new trial on behalf of the unknown heirs of Arriola. Subsequently he filed an amended and second amended application for new trial, the latter on January 30, 1919. These applications were verified and unquestionably asserted grounds for a new trial if Chester had authority to file them. On January 26, 1919, plaintiffs in said cause filed a motion in which they prayed that Chester be cited to show cause by what authority he prosecuted the application for new trial, and, upon failure to do so, that the proceedings be dismissed. This motion was overruled upon hearing. There is an agreement in the record to the effect that the motion for new trial filed by Chester was still pending when the present suit was tried.

The admissibility in evidence of this judgment was questioned by defendants upon the ground that, at the time it was offered, there was a motion for new trial pending, and therefore the judgment had not reached that stage of finality which would warrant its admission in evidence in support of any rights adjudicated by it. The Court of Civil Appeals held that—

⊜➝For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

"If Chester had the authority to file this application, then the judgment against the unknown heirs was not a final judgment and was not admissible in evidence by the parties to it for any purpose."

[1] This holding we think is unquestionably correct. While there is diversity of opinion among the courts of other states, it has been repeatedly held, and is now the settled law of this state, that a judgment is deprived of that finality necessary to make it admissible in evidence or the basis of a plea in bar in support of the right or defense declared by it so long as there is an appeal pending either upon a supersedeas or cost bond. Railway v. Jackson, 85 Tex. 605, 22 S. W. 1030; Faulk v. Sanderson, 89 Tex. 692, 36 S. W. 403; Grocery Co. v. Railway, 95 Tex. 486, 68 S. W. 265, 59 L. R. A. 353; McDonald v. Ayres (Tex. Com. App.) 242 S. W. 192; Cunningham v. Holt, 12 Tex. Civ. App. 150, 33 S. W. 981 (writ of error refused); Slaughter v. Cooper (Tex. Civ. App.) 107 S. W. 897; Van Natta v. Van Natta (Tex. Civ. App.) 200 S. W. 907 (writ of error refused). The above case of Railway v. Jackson (opinion by Chief Justice Stayton) is probably the leading case in this state on this subject. The holding in that case seems to be rested upon the proposition that a proceeding to review a judgment either by appeal or writ of error "is but the continuation of the action or suit brought in the trial court."

It is equally settled by judicial decisions in this state that the application for new trial authorized in cases of this character under R. S. art. 2026, "is but a continuation of the original suit, and does not possess the character of an independent action in equity to review the judgment. While the petition was styled, under the statutory term, as a bill of review, it amounted to no more than a motion for new trial, permitted in such cases by virtue of the statute, to be filed and heard after adjournment of the term." Mussina v. Moore, 13 Tex. 7; Wiseman v. Cottingham, 107 Tex. 68, 174 S. W. 281; Miles v. Dana (Tex. Civ. App.) 136 S. W. 848; Glaze v. Johnson, 27 Tex. Civ. App. 116, 65 S. W. 662; Wolf v. Sahm, 55 Tex. Civ. App. 564, 120 S. W. 1115, 121 S. W. 561; Fred v. Fred, 58 Tex. Civ. App. 574, 126 S. W. 900.

The same process of reasoning which would deprive a judgment of the trial court, pending review by appeal or writ of error, of that finality which would authorize its admission in evidence in support of a right or defense declared by the judgment, would apply with equal force to a judgment rendered upon service by publication, pending determination of a motion for rehearing authorized by statute.

The Court of Civil Appeals so held. But that court held the judgment admissible upon the ground that Chester had no authority in law to file the motion. This conclusion is rested upon the general proposition that, in the ordinary contractual relation of attorney and client, the latter's authority ceases upon entry of final judgment; and upon the wording of our statute authorizing a new trial in this class of cases, which reads:

"In cases in which judgment has been rendered on service of process by publication, where the defendant has not appeared in person or by an attorney of his own selection, a new trial may be granted by the court upon the application of the defendant for good cause shown, supported by affidavit filed within two years after the rendition of such judgment." R. S. art. 2026.

The Court of Civil Appeals held that this statute authorizes a new trial only where the application therefor is made by the defendant in person, or by his authority, and that this right to apply for a new trial, after the court has adjourned for the term, is not extended to the attorney appointed by the court to represent absent or unknown defendants.

[2] We find ourselves unable to concur in this holding. In the early case of Russell v. Randolph, 11 Tex. 460, the attorney ad litem appointed by the court to represent unknown heirs served by publication sued out a writ of error on behalf of his clients. The Supreme Court reviewed the case, reversed the trial court's judgment, and remanded the cause for further trial. The right of the attorney ad litem to have the case reviewed by the Supreme Court by appeal or writ of error was questioned in a motion by defendants in error "to dismiss writ of error, for want of parties plaintiff in error, and for want of authority in Bradbury (the attorney ad litem) to bring the same before this court." This motion was disposed of in the following language:

"There is nothing in the grounds stated by the counsel for the appellee, in his motion to dismiss the writ of error, in the case. We have no doubt but the attorney, appointed by the court to represent the heirs, had a right to bring up the case for revision."

We can see no reason why an attorney ad litem, whose duty it is to represent the interests of unknown or unascertained defendants, and to protect their every interest in a suit brought to divest them of whatever rights they may have in the matter in suit, could be held to be invested with the right to prosecute an appeal or sue out a writ of error from a judgment adverse to his clients, and at the same time be held to be denied the power to file in their behalf a motion for new trial, which the statute gives such defendants themselves the right to file. It was said in the Wiseman Case above that—

"A liberal discretion should be employed in the granting of a new trial under this statute."

The statute does not in terms provide that the defendant can exercise this right only in person or by attorneys appointed by him. It does, however, secure this right to the defendant who is served by publication. The appointment of an attorney ad litem in such cases is not merely a formal act, nor are the duties of such attorney merely perfunctory. The judgment in such cases is as binding as if made upon personal service, and as to the defendants properly served by publication forever settles their rights which are brought in issue by the pleadings and adjudicated by the decree. We have no doubt but that the attorney ad litem owes every duty to the unknown defendants, whom he is appointed to represent, that he would owe to a client who had personally retained him. See Steger v. Hume, 97 Tex. 324, 79 S. W. 19. The attorney ad litem, it is true, is an officer appointed by the court for a specific purpose; and his authority is ousted whenever the unknown defendant makes himself known and appears in the litigation. But until that time he is invested with full authority to conduct the litigation in the same manner as if he personally represented the defendant, and is charged with the duty of protecting every right of the defendant which comes within his knowledge. It can hardly be questioned that he would be subject to removal at any time for any dereliction in the discharge of the duties ordinarily owing by an attorney to his client, whenever the court might become aware of such dereliction, and in that event the court would have full power to appoint some other attorney ad litem. It seems clear to our mind that the appointment of an attorney ad litem is for the purpose of representing the defendant in every right which he possesses, statutory or otherwise, until the time has elapsed in which no rights can be asserted by the defendant. It is our view, therefore, that Chester had authority to file the motion for a new trial, and, as it was pending at the time this suit was tried in the lower court, the judgment in that case was not admissible as a link in plaintiff's chain of title.

Passing to the issue of 10 years' limitation: The deed from Raguet, as attorney in fact for Eduardo Arriola, was executed March 8, 1838. This deed conveyed the land in question to W. F. Logan and John. K. Allen. Logan died the same year in which the deed was executed, and John K. Allen died in 1838, leaving as his sole heirs at law his mother and father. On March 18, 1840, the latter conveyed to A. C. Allen, in addition to certain designated lands, "all right, title, claim, interest or demand which as the rightful and legal heirs we have to the estate of our son, John K. Allen, late of Harris county, Tex., now deceased, whether it be in wild or improved lands," etc.

Plaintiffs took the deposition of one Henry Coplin, who testified in substance: That he went into possession of the Eduardo Arriola league in the spring of 1846 as the tenant of A. C. Allen; that he built a cabin and cultivated some small fields upon the survey and remained in possession until September or October, 1858. He testified that A. C. Allen personally was present and put him in possession of the league.

It was contended by plaintiffs in error in the Court of Civil Appeals that the deposition of Coplin was fictitious. Much testimony was adduced upon this issue, and a large portion of the appellees' brief in the Court of Civil Appeals is devoted thereto. The Court of Civil Appeals held, however, that the evidence was sufficient to warrant the submission of the issue of Coplin's occupancy to the jury. The propriety of this holding is not questioned in the application for writ of error, and the issue is therefore not before us.

In avoidance of plaintiff's limitation pleas, defendants Billingsley et al. alleged that A. C. Allen was absent from the state from 1846 to 1858. The Court of Civil Appeals held that the evidence upon this point was not so conclusive as to warrant withdrawing the issue from the jury. The correctness of this holding is vigorously assailed in the petition for writ of error.

By section 22 of the Act of February 5, 1841 (Laws 1840–41, p. 170), it is provided that:

"If any person against whom there is, or shall be cause of action, is or shall be without the limits of this republic at the time of the accruing of such action, or at any time during which the same might have been maintained, then the person entitled to such action shall be at liberty to bring the same against such person or persons after his or their return to the republic; and the time of such person's absence shall not be accounted, or taken as a part of the time limited by this act." R. S. art. 5702.

It is contended that the evidence conclusively shows that A. C. Allen was absent from the state of Texas from 1853 to 1860; that during those years he was engaged in business in the republic of Mexico as a large exporter of mahogany and was Vice Consul, and later Consul, of the United States.

The evidence upon this subject may be summarized as follows:

A. C. Allen, who was a nephew of the A. C. Allen under whom Coplin claims to have held the land from 1846 to 1858, testified by deposition at the instance of plaintiffs. Upon cross-examination he testified that according to family history his uncle, A. C. Allen, was on the Isthmus of Tehuantepec and was United States Consul at Minatitlan and remained there until a short time before his death, which occurred in the early sixties. He did not know what years A. C. Allen was in Mexico, nor whether he was in Texas between 1845 and 1855, but that the

family history showed that he was away from Texas considerable about matters in Mexico; that it was their family history that he was Consul in Minatitlan, Mexico, somewhere in the neighborhood of the year 1861, the exact date of which he could not give. He further testified that—

"According to our family history, he conducted a very large mahogany business in Mexico, getting out mahogany in very large quantities and shipping it to New York in chartered ships; according to our family history, as much as 30 cargoes per annum. I cannot say as to his being in business in Tampico, but he is said to have done a very large shipping business in the mahogany enterprise as stated before. * * * According to our history he was on the Isthmus of Tehuantepec and was United States Consul at Minatitlan and remained there until a short time before his death."

O. W. Bocock also testified by deposition at the instance of plaintiffs. He was one of the executors of the estate of A. C. Allen's deceased wife, and testified that he was somewhat familiar with the family history of A. C. Allen; that A. C. Allen died in New York about the time of the outbreak of the Civil War. He did not know how long A. C. Allen was in business in Mexico, or during what years, or about the details of his business, but had heard he was in business in Mexico; that he was in possession of his original appointment as Vice Consul at Minatitlan dated July 1, 1854, and of his original appointment as Consul at said place June 14, 1859; that these papers came into his possession when he was executor of Mrs. Allen's estate.

There were a number of letters taken from the archives of the State Department at Washington in reference to A. C. Allen's vice consulship and consulship at Minatitlan. These letters are of the following dates: June 27, 1853, July 19, 1853, May 22, 1854, December 19, 1854, January 3, 1855, April 2, 1855, May 25, 1858, June 14, 1858, July 1, 1858, September 30, 1858, March 31, 1859, April 16, 1860, and September 8, 1860. There were receipts from A. C. Allen dated at the Consulate at Minatitlan August 15, 1858, and September 20, 1858; also, accounts and vouchers of Allen as Consul at Minatitlan covering the quarter ending September 30, 1858, and the period from November 1, 1858, to March 31, 1859.

There was no testimony that A. C. Allen was in the state of Texas between 1853 and 1858 further than what might be inferred from the testimony of Coplin, who says that he met Allen only a few times during the 12 years he was on the land; that he met A. C. Allen in Jefferson county in 1846 and occasionally thereafter. There is nothing in the testimony of Coplin which fixes the time when he saw Allen in Texas after he was placed in possession of the land by Allen in the spring of 1846.

We have reached the conclusion that under this state of evidence a business residence in Minatitlan, Mexico, was shown for A. C. Allen beginning in the year 1853. The testimony upon this subject is of such a character that we view the issue of A. C. Allen's absence from the state as one of law. We do not regard the statement of Coplin as raising any substantial issue that Allen was in Texas between 1853 and 1858. He does not pretend to fix any time when he saw Allen in Texas after he was placed in possession of the land by Allen in the spring of 1846. That he may have seen Allen occasionally in Texas after that is entirely consistent with Allen's continued absence from Texas from 1853 to the date of his death.

[3] We think the evidence above outlined establishes as a fact that Allen had acquired a residence in Minatitlan, Mexico, as early as June 27, 1853, when, as shown by his letter of that date, he was Vice Consul for the United States at that place. The evidence touching his vice consulship in the years 1853, 1854, and 1855, and his consulship from 1858 on, is of unquestionable character, being adduced from the archives of United States government departments. The subjects dealt with in the several communications relate to matters connected with the public business. The first of these communications in point of time is an extract from a letter from A. C. Allen, Vice Counsul at Minatitlan, to Judge Conklin, American Minister to Mexico, dated at Minatitlan June 23, 1853. The extract relates to the imprisonment of a mutinous seaman. Other letters which relate to leaves of absence of the Consul and appointment of Allen to act in his stead show that the government was quite punctilious in requiring the Consul to observe closely the time limit of his leave.

The testimony of the witnesses Allen and Bocock, while necessarily vague and indefinite as to time, is nevertheless quite clear to the effect that it was the family history that, for some years before his death in the early sixties, A. C. Allen resided in Minatitlan, on the Isthmus of Tehuantepec, where he was engaged extensively in exporting shiploads of mahogany. The witnesses testified by deposition at the instance of plaintiffs, and their depositions were used by plaintiffs. They were not in any way interested in the controversy adversely to plaintiffs. Their testimony was not subject to any criticism, and was not of such a character as to warrant its rejection in the total absence of evidence which would tend to contradict it. This evidence, in connection with the showing that A. C. Allen was Vice Consul at Minatitlan in June, 1853, and at various dates thereafter in 1853, 1854, and 1855, we

think must be held to establish the fact that Allen was a resident of Minatitlan in those years. Equally strong is the proof that he was a resident of Minatitlan, and Consul there during the years 1858, 1859, and 1860.

From the well-established legal principle that "Proof of the existence at a particular time of a fact of a continuous nature gives rise to an inference, within logical limits, that it exists at a subsequent time" (22 C. J. 86), we think the presumption arises that the status of A. C. Allen, as a resident of Minatitlan in the years 1853, 1854, and 1855, continued during the intervening years between 1855 and 1858. For cases applying the presumption of continuity of status to a person's residence, see 22 C. J. 89, note 15.

[4] We think the Court of Civil Appeals correctly held that under the facts in the present case presumption of a deed or valid power of attorney from Arriola or his heirs does not arise. The complete chain of title under which plaintiffs claimed was exhibited in evidence. That chain of title was regular from the sovereignty to the plaintiffs, but for the fact that the Raguet deed was void because the power under which it was executed antedated the extension of the grant. The acts of ownership of plaintiffs' predecessors in title can be consistently referred to the chain of title exhibited in evidence. There is no circumstance which would warrant indulging a presumption of some conveyance or power from Arriola or his heirs, other than that shown in the record. Presumption of a grant from lapse of time and assertion of ownership does not arise where all the circumstances are consistent with the nonexistence of the grant, and where a grant, defective or invalid, is shown, another and different grant will not be presumed. Lumber Co. v. Pinckard, 4 Tex. Civ. App. 671, 23 S. W. 720, 1015 (writ of error refused); Hermann v. Thomas (Tex. Civ. App.) 141 S. W. 574; Poland v. Porter, 44 Tex. Civ. App. 334, 98 S. W. 214.

[5] We also think the Court of Civil Appeals has correctly disposed of the issue of prima facie showing of title under prior possession. We quote with approval the following from the opinion:

"Plaintiff's possession, if any, was under a void deed. This negatived any presumption of title from the showing made by plaintiffs of prior possession. Robertson v. Kirby, 25 Tex. Civ. App. 472, 61 S. W. 967; Lynn v. Burnett, 34 Tex. Civ. App. 335, 79 S. W. 64; Corrigan v. Fitzsimmons (Tex. Civ. App.) 76 S. W. 68. Under these authorities plaintiffs were not entitled to go to the jury on the issue of prior possession."

It is our conclusion that the judgment of the Court of Civil Appeals should be reversed, and that of the trial court affirmed.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.