W. W. BATCHELLER ET AL. V. O. BESANCON ET AL.

Delivered May 28, 1898.

**1. Land Certificate—Transfer—Legal or Equitable Title.**

The assignee of a land certificate by an unqualified written transfer thereof and of the land to be located by virtue of it acquires the full legal title, and not merely the equitable title, to the land subsequently located thereunder, although it be patented to the assignor.

**2. Power of Attorney Presumed After Twenty Years.**

A transfer of a land certificate, written upon the original certificate and purport-

ing to have been made sixty-three years prior to the date of trial, and to have been executed by one as attorney in fact for the owner of the certificate, and coming from the proper custody—the General Land Office—is admissible as an ancient instrument without proof of the power.

### 3. Evidence—Identity of Names—Presumption.

The identity of the transferee named in a transfer of a land certificate and of a person claiming to be such transferee will be presumed from the identity of names, in the absence of evidence to the contrary.

### 4. Witness—Cross-Examination.

A party cross-examining a witness on collateral matters is concluded by his answers and can not introduce other witnesses to contradict him as to such matters.

### 5. Stale Demand.

The plea of stale demand can not be urged against one asserting the legal and not merely an equitable title to land.

APPEAL from Dallas. Tried below before Hon. W. J. J. SMITH.

*J. D. Thomas, W. N. Coombs, J. R. Haynes,* and *Cockrell & Muse,* for appellants.

*K. R. Craig* and *C. Von Carlowitz,* for appellees.

FINLEY, CHIEF JUSTICE.—The heirs of L. A. Besancon sued, in trespass to try title, Batcheller, an occupant, and Haynes and A. Benham and G. W. Benham, as claiming 640 acres of land in Dallas County, Texas, alleging title in fee. Haynes and A. Benham disclaimed. G. W. Benham pleaded not guilty, and by cross-action set up title in fee, and made Scott and Turney parties. Batcheller, Scott, and Turney united in their defense and pleaded not guilty; limitations of three, five, and ten years, and laches of both plaintiffs and G. W. Benham. The cause was tried by the court and judgment rendered for plaintiffs. Batcheller, Scott and Turney appeal. G. W. Benham also separately appeals.

The trial-judge filed the following conclusions of fact and law:

"1. The land in controversy was patented by the State of Texas to L. A. Besancon; and it was admitted in open court by all the defendants that the testimony offered by plaintiffs established the facts, (1) that they, the said plaintiffs, were the sole heirs at law of L. A. Besancon, and (2) that their ancestor was the L. A. Besancon named in the patent as grantee; and upon such admission, as well as the evidence introduced, I so find.

"2. That the patent was issued by virtue of the location of a certificate No. 151, issued by the Republic of Texas to Thomas Toby as the agent of said Republic, dated December 20, 1836, for 640 acres of land.

"3. I further find that said certificate was by an indorsement thereon, duly and formally made and witnessed as provided in the face of said certificate for the transfer of the same, transferred by Thomas Toby to L. A. Besancon on February 1, 1837.

"4. I find an indorsement on said certificate in the following language, namely: 'Natchitoches, La., Aug. 21, 1837.—For value received,

I, Edward R. Besancon, attorney in fact for L. A. Besancon, of Natchez, State of Mississippi, hereby transfer, assign, and set over all the right, title and interest which this scrip gives to the said L. A. Besancon to the land herein mentioned to Ephraim Terry, of the town and parish of Natchitoches, State of Louisiana, or his legal representatives, with full guarantee against all claims whatever. (Signed) Edward R. Besancon, attorney in fact for L. A. Besancon. Witnessed by B. P. Despallier, A. Rawlson.' That there also appears on said certificate as introduced in evidence a transfer from Ephraim Terry to James Lansing, on the date the 14th day of April, 1838. That there also appears on said certificate a transfer thereof of date the 16th day of April, 1839, from James Lansing to G. W. Benham, which transfer was witnessed by Richard Matson and Diama Matson.

"5. I find that there is no evidence in the case showing any act of ownership of the said certificate or scrip by any of the assignees thereof, other than the fact that it was subsequently located on the land in controversy, a survey thereof made by the properly constituted authorities, and field notes thereof returned to the General Land Office, and the recitals in said field notes, where said field notes and the certificates remained until the issuance of the patent.

"6. I further find that none of the parties defendant in this suit ever exercised any acts of ownership over the land in controversy, as claiming under any assignment of said certificate from or under L. A. Besancon.

"7. I find that the original certificate with the indorsement thereon came from the proper custodian—the General Land Office of the State of Texas—freed from suspicion, and that by reason of the age of the transfer indorsed on said certificate signed by Edward R. Besancon, as attorney in fact for L. A. Besancon, that I have a right to presume, and as a matter of fact do presume, and so find, that Edward R. Besancon was duly empowered by L. A. Besancon, the then owner of said certificate, to make such transfer. This finding is based solely upon such presumption, there being no other proof that such or any power of attorney was ever given by L. A. Besancon to E. R. Besancon.

"8. I find from the evidence in this case that the defendant, G. W. Benham, is not the G. W. Benham to whom the above mentioned certificate was assigned and transferred by James Lansing. That he has no interest and never had any interest or title in and to said certificate or the land in controversy.

"9. I find that the defendants, W. W. Batcheller, N. G. Turney, and S. B. Scott, each and all of them, have wholly failed by the testimony in this case to establish any right or title in and to the land in controversy. That the said defendants have not in any manner connected themselves with whatever outstanding equitable title there may be against plaintiffs' title under this patent.

"10. That the claim of title by defendant Batcheller, joined by warrantors Turney and Scott under the deed from Calloway Patrick, is inoperative as title to said land. That the claim of said defendants under

their title from Press Fletcher, and the said Press Fletcher's conveyance from the tax collector of Dallas County, and all the other evidence offered in connection with said tax sale constitutes no title.

"11. I further find that the said defendants, Batcheller, Turney, and Scott, have not sustained either one of their pleas of limitations and possession set up in defense to this suit.

"12. I find from the evidence, and upon an inspection of the original, that the body of the transfer from James Lansing to G. W. Benham is in the handwriting of James Lansing.

"13. I find that all the transfers indorsed on the original certificate are genuine, and upon such conclusion, and in the absence of any other evidence on the matter, I conclude that the original certificate passed by manual delivery to the assignee at the date of each respective indorsement.

"14. I further find that the name of G. W. Benham was on the original field notes returned to the General Land Office."

Conclusions of Law.—"By reason of the presumption here found as a conclusion of fact, that Edward R. Besancon had authority from L. A. Besancon to make the transfer and conveyance indorsed on the original certificate, and by reason of the conclusion that the subsequent transfers on said certificate are regular and valid, I conclude that the said certificate and the title thereto passed into G. W. Benham; but that the legal title originally residing in the State passed by the issuance of the patent into L. A. Besancon and his heirs, as the plaintiffs in this case.

"2. That there is an outstanding equitable title in G. W. Benham, which, if G. W. Benham were a party to this suit, under proper pleadings, would be superior to the legal title conveyed by said patent; but, as hereinbefore determined in the conclusions of fact, none of the defendants have established any privity or connection with said outstanding equitable title, and it is the opinion of the court that the legal title vested by said patent in the plaintiffs, as the heirs of the grantee, L. A. Besancon, should prevail, and judgment is therefore rendered that plaintiffs should recover the land in controversy.

*Opinion.*—1. The appellants challenge the correctness of the conclusions and judgment of the trial court, and assert that the court erred in holding that the legal title to the land was in the heirs of L. A. Besancon, it being shown that L. A. Besancon transferred the certificate prior to the issuance of the patent to him, as assignee of Thomas Toby, agent. The court held that the interest of L. A. Besancon in the certificate passed by the assignment to Terry, and that on the subsequent issuance of the patent to him as assignee, the superior equitable title to the land vested in the owner of the certificate, but that the legal title remained in the heirs of Besancon; and as none of the defendants had connected themselves with the equitable title, the heirs of Besancon should recover upon their legal title.

The transfer of the certificate is in this language: "For value received,

I, Edward R. Besancon, attorney in fact for L. A. Besancon, of Natchez, State of Mississippi, hereby transfer, assign, and set over all right, title, and interest which this scrip gives to the said L. A. Besancon to the land herein mentioned to Ephraim Terry, of the town and parish of Natchitoches, State of Louisiana, or his legal representatives, with full guarantee against all claims whatever."

This conveyance manifests the intention to convey the land, and, under our decisions, it is clear that upon the issuance of a patent to L. A. Besancon, as assignee, the legal title to the land, located by virtue of the certificate, vested in the owner of the certificate. The owner of the certificate did not acquire a mere equitable title to the land, but the full title—legal and equitable. Borroum v. Culmell, 37 S. W. Rep., 313; Baldwin v. Root, 40 S. W. Rep., 3. It follows, that the plaintiffs' proof of title failed, and they were not entitled to recover the land in controversy, unless some of appellees' contentions—which we now notice—should prevail.

Appellees assert, first, that there was no proof of the existence of a power of attorney from L. A. Besancon to Edward R. Besancon necessary to the authority to convey the certificate, and no such state of facts as would justify the conclusion that the power to convey existed.

The evidence in relation to this matter is as follows: The transfer of the certificate was made August 21, 1837—sixty-three years prior to the date of the trial; the transfer was written upon the original certificate, and on its face it declared that Edward R. Besancon was attorney in fact for L. A. Besancon; the land was located and surveyed under it, and it was returned to the General Land Office in 1846, and it came from the proper custody—the General Land Office. Edward R. was a brother of L. A. Besancon, and died at the house of the latter, eleven years after the date of the transfer; L. A. Besancon died in 1853—his wife lived until 1889; and their sons, O. and C. W. Besancon, never heard of the certificate until 1896, when informed of it by their agent, R. F. Hendricks, who applied for a patent to the land in the name of L. A. Besancon, as assignee of George W. Benham. There is no evidence that the Besancons made any claim to the certificate or land from the year 1837 to 1896. A regular chain of transfers of the certificate from Thomas Toby, agent, down to George W. Benham, including the transfer from Besancon to Terry, was shown, and it was shown that James Lansing, when he transferred the certificate to George W. Benham in 1839, delivered the certificate to Benham; that Benham delivered the certificate to John Dodd, to be located and returned to the General Land Office in 1846.

The certificate and transfers thereon were admissible as ancient instruments, and upon the facts stated, the court was fully authorized in reaching the conclusion that the power to make the transfer, in the case of the transfer from Besancon to Terry, existed. In Johnson v. Timmons, 50 Texas, 534, it is said: "It is a well established principle that, in most cases, where an instrument would be admissible in evidence as an ancient deed without proof of its execution, the power under which it purports to have been executed will be presumed." Citing Watson v. McGrew, 16

Texas, 513; Daily v. Starr, 26 Texas, 562; Hooper v. Hall, 35 Texas, 82; Veramendi v. Hutchins, 48 Texas, 513.

It is further urged by appellees that the title which vested in the owner of the certificate upon the issuance of the patent to L. A. Besancon, assignee of Thomas Toby, agent, was created by estoppel, and that it must be shown that the estoppel operated in favor of the party asserting benefits under it.

This is not a defense of estoppel, and the rules applicable to such a defense can not be applied here. As has been heretofore said, upon the issuance of the patent the legal title vested in the owner of the certificate, and, it matters not how the title arose, if the plaintiffs did not own the title they should not recover. 1 Eng. Rul. Cases, 495, 497; Welch v. Dutton, 79 Ill., 465. These observations conclude the claims of the plaintiffs; they are not entitled to recover the land in controversy.

The contest next arises between the appellant, George W. Benham, a defendant in the court below, upon his cross-bill setting up title in himself and seeking a recovery against the plaintiffs and his codefendants.

The court below found that the appellant, George W. Benham, was not the George W. Benham to whom the certificate was transferred. The testimony of appellant Benham upon that point was disbelieved and disregarded by the court.

Appellant Benham contends that the court admitted and considered improper evidence, which affected the decision upon the issue of his identity. The bills of exception numbers 2 and 7 present the evidence objected to and claimed to be inadmissible and hurtful, and we here give one of the bills which sufficiently discloses the evidence objected to:

"Be it remembered, that on the trial of the above entitled cause the plaintiffs offered to prove by the witnesses Collins and Petty, the following facts, to wit: By said Collins that he knew Richard Matson, Jr., and James Matson, sons of Richard Matson, since 1840 or 1841, at which time their father was dead, and from that time on he saw them frequently for nine or ten years, and that so far as he knew they never did leave Texas to go to school. And by said Petty, plaintiffs offered to prove that he knew Richard Matson in his lifetime, and also his said sons, and was frequently at the home of Richard Matson to carry corn to the mill, and that he knew said sons after the death of their father, Richard Matson, about 1839, for many years, and that so far as he knew said sons Richard and James Matson never left Texas to go to school; that they had but little education, and that they never went out of Texas to go to school; that Richard Matson was stabbed to death by Asa Mitchell about the fall of 1839; that he saw him lying under his wagon bleeding and dying. And also offered to prove by Mose Matson that Richard Matson was killed in August, 1839, and that he saw him killed. This evidence was offered by plaintiffs on the question of the identity of George W. Benham, and as affecting his credibility and the weight to be given his testimony, he having previously testified that he came to Texas about 1838 or 1839 and

went to the home of Richard Matson, where he remained three or four years, and that while there he bought of James Lansing the certificate by virtue of which the land in controversy was located and same was transferred to him by James Lansing's writing the transfer therefor and signing same, which transfer was witnessed by Richard Matson and Diadama Matson, and that when he, the said Benham, returned to Missouri he took with him James and Richard Matson, sons of said Richard, and put them to school, their father Richard Matson sending them and paying all their expenses and furnishing horses for their conveyance. Such was the state of the record when plaintiffs offered to prove the foregoing facts by the witnesses above named.

"Defendant Benham objected to the introduction of all of the said testimony, for the reason that the facts sought to be proved were irrelevant and immaterial, and were collateral to any material fact actually in issue, and because it was not competent to contradict or impeach said Benham as to said irrelevant and immaterial matters, except by his own cross-examination; and because no question had directly been asked by Benham as to the time, manner, place, or circumstance of the death of said Richard Matson (which is a fact). The said objections were each and all by the court overruled. Said witnesses were severally permitted to testify as above set forth, and the court heard and considered all of said testimony (with other testimony) in coming to the conclusion that said defendant and witness, Benham, was not the Benham to whom said certificate was transferred by James Lansing. To all of which rulings and action of the court the defendant Benham by his counsel duly excepted, and here now tenders this bill of exceptions, and the same is allowed and ordered filed as a part of the record herein."

The name of appellant Benham is the same as that of the transferee of the certificate, and, without proof to the contrary, identity in person should be presumed. Yarbrough v. Johnson, 34 S. W. Rep., 310. Appellant Benham testified positively that he was the person to whom the certificate was transferred—the George W. Benham named in the transfer. Opposed to this, there was an effort made to show that appellant was not the Benham to whom the certificate was transferred.

This seems to have been treated as the main contested issue of fact involved on the trial, and the court certifies that he considered this evidence on this issue. The evidence was not pertinent to the issue of identity, but tended to impeach the witness whose testimony was relied upon to establish the identity.

It seems to be well established that a witness can not be impeached by showing that he has testified falsely upon collateral matters; when he is cross-examined upon collateral matters the party cross-examining the witness is concluded by his answer, and can not introduce other witnesses to contradict him as to such matters. 1 Greenl. on Ev., secs. 448, 449; More v. More, 73 Texas, 388; Railway v. Phillips, 42 S. W. Rep., 582; Gillett on Ind. and Col. Ev., secs. 51, 90.

It is manifest that the consideration of this evidence was injurious to appellant Benham, and its admission and consideration by the court was error.

On the trial this instrument was introduced in evidence:

"No. 293, Geo. W. Benham. John Dodd and George Layne sworn, proved him to have been a resident citizen of Texas since 1st March, 1839, a single man; ordered that a certificate issue to said Benham for three hundred and twenty acres of land. December 11, 1839."

Which instrument was by O. A. Seward, clerk of the County Court of Washington County, certified to be a true copy of order granting to Geo. W. Benham for 320 acres of land as appears from the record of land commissioner of Washington County, Texas, which certificate was dated October 18, 1897.

Defendant Benham objected to the admission of said document in evidence, because irrelevant and immaterial, and because same was incompetent as evidence of the collateral facts therein recited—same being offered by plaintiffs to prove date Geo. W. Benham came to Texas. The court overruled the objections and admitted said instrument in evidence, to which ruling defendant Benham excepted.

The pertinency of this evidence is not manifest. It does not tend to show that appellant Benham was not in Texas at the date of the transfer of the certificate, and there is no other respect, that we can perceive, in which it could be considered material.

The plea of stale demand urged by Benham's codefendants against him can not be maintained; the title which he asserts being a legal title and not merely an equitable title. Clark v. Adams, 80 Texas, 674.

We find no other points presented which we deem it necessary to discuss.

We approve and adopt the conclusions of fact of the trial judge in so far as they show the chain of title, through the certificate, transfers, and patent, including the transfer from L. A. Besancon to Ephraim Terry, and hold that these facts show that plaintiffs have no title to the land.

As to plaintiffs, appellees, the judgment is reversed, and here rendered that they take nothing by their suit. As to the other parties the judgment is reversed and the cause remanded for trial of the issue of title on the cross-bill of appellant Geo. W. Benham.

*Reversed and rendered in part.*

*Reversed and remanded in part.*

Writ of error refused.