on the contract. Diacomis v. Wright, Tex.Com.App., 34 S.W.2d 806; 2 Tex. Jur. 558.

■ The argument is made that the evidence stated does not disclose that the minors had such an interest in the bonds as would justify a recovery of their market value as against the bank. The point made is that, as shown by paragraph 4 of the will of H. S. Brevoort, deceased, the policy of insurance was payable to Mrs. Keturah Brevoort and therefore the proceeds of the policy belonged to her. We are not concerned with the effect of the provisions of the will. The rights of the minors concerning the bonds are grounded on the compromise agreement between their guardian and Mrs. Brevoort. By virtue of said agreement, they at least acquired a lien on the bonds to secure the performance by Mrs. Brevoort of her promise to pay the sums specified in said agreement. It is argued that this cannot be so for the reason that in such case Mrs. Brevoort would have occupied the status of both pledgor and pledgee. This argument disregards the important fact that possession of the bonds was not committed to the unrestricted control of Mrs. Brevoort.

■ Thus far we have discussed the case as if all the evidence hereinbefore recited had been considered by the trial court as against the bank. However, as a matter of fact, the record discloses that all the testimony relating to the compromise agreement, including the testimony of Francis, was excluded by the trial court from evidence as against the bank. It is readily seen, from the foregoing discussion of the points involved, that the excluded testimony was essential to show the liability of the bank to the minors. The Court of Civil Appeals had no authority to consider, as it evidently, did, such excluded testimony as a basis for rendering judgment against the bank. The Leader, Inc., v. Elder Mfg. Co., Tex.Com. App., 39 S.W.2d 880. For this reason the judgment of that court is erroneous. The judgment of the Court of Civil Appeals is reversed. The judgment of the trial court, in so far as same is in favor of the guardian against Mrs. Brevoort, is affirmed; but in all other respects the judgment of the trial court is reversed and the cause remanded.

Opinion adopted by the Supreme Court.

## LOVING COUNTY v. HIGGINBOTHAM et al.

### No. 1772.

Court of Civil Appeals of Texas. Eastland.
April 8, 1938.

Rehearing Denied May 6, 1938.

Mullican & Nelson and Lockhart & Brown, all of Lubbock, for appellant.

Crenshaw & Dupree, of Lubbock, Wagstaff, Harwell, Wagstaff & Douthit, of

Abilene, and Carl Rountree, of Lamesa, for appellees.

FUNDERBURK, Justice.

Following the creation of Loving County by act of the Legislature in 1887, and the attachment thereof to Reeves County "for judicial, surveying and all other purposes," an election to organize the county was held July 8, 1893, as the result of which Mentone was selected as the county seat, and J. J. Combs was elected county judge, together with other officers, including four county commissioners, all of whom qualified and received certificates of election, except one county commissioner and one other officer (sheriff and tax collector). On September 6, 1893, the commissioners' court entered an order appointing J. J. Combs as the agent of Loving County "to locate, secure patents, and negotiate the sale of, the school lands belonging to the said Loving County." A certified copy of this order was filed in the General Land Office on February 8, 1894, with payment of $92 surveying fees. The next day (February 9, 1894) the State of Texas, by the Governor and Land Commissioner, issued patents to Loving County covering four leagues of county school land located in Dawson County, being leagues Nos. 271, 272, 273, and 274. By deed dated February 21, 1894, filed for record in Dawson County February 28, 1894, Loving County, by J. J. Combs, styling himself "County Judge and agent of said county," with the further recitation that he was "duly authorized by an order of the commissioners' court of said county to sell and convey the land described" therein, purported to convey said league No. 271 to W. R. Fowler. The consideration recited was a note for $3,099.60, further described as being "of even date, payable five years after date and stipulating for six per cent per annum interest and ten per cent attorney's fees on the principal and interest of said note if it is not paid at maturity and suit is brought to enforce its collection." Said deed contained a general warranty of title, and recited the usual agreement and stipulation that a vendor's lien was retained to secure payment of the note with interest and attorney's fees. On the same date three other identical deeds were executed purporting to convey each of the other leagues, 272, 273, and 274, to said W. R. Fowler, each deed being acknowledged before the same officer, and filed for record at the same time in Dawson County.

In 1897 the Legislature passed an act, the caption of which was as follows: "An act to provide for the disorganization of the County of Loving, in the State of Texas, and to attach said county to the County of Reeves for judicial and other purposes; and to provide for the assessment and collection of taxes in said county, and for the payment of the outstanding indebtedness of said county."

A preamble to the act recited: "Whereas the County of Loving as it now exists is in a disorganized condition, having no county officials resident within the limits of said county, and no taxes having been assessed and collected in said county for the years 1895 and 1896 and a portion of the taxes assessed for the years 1893 and 1894 remain uncollected; Therefore," etc. 10 Gammel's Laws, p. 1259. Section 7 of that act in part provided that " * * * the commissioners' court of Reeves County shall take all necessary steps by suit in the name of Loving County to recover back to said county all lands and other property properly belonging to it, which may have been wrongfully converted or disposed of by any person assuming to act for said county or otherwise * * *."

On February 13, 1899, the commissioners' court of Reeves County entered an order providing for the employment of counsel to institute and prosecute a suit for the recovery of said four leagues of school land. Such suit was brought January 16, 1900, in Howard County, to which Dawson County was attached for judicial purposes, against Fowler and the persons then claiming to own the land under title through him. League No. 271 was, by amendment of pleadings, eliminated from the subject matter of the suit before rendition of the judgment. The judgment of date October 5, 1903, awarded R. N. Graham, vendee of W. R. Fowler, title and possession of leagues 272, 273, and 274, subject to a lien thereon in favor of Loving County to secure the purchase price. The court papers in that case were lost and not available at the trial of this case. By deposition, testimony by one of the attorneys was introduced to show that the authority of Combs to execute the deeds to Fowler of the four several leagues of land, particularly with respect to a certain order of the commissioners' court, was put in issue and adjudicated in favor of such authority. Without appeal the judgment became final. The purchase price of leagues Nos. 272, 273,

and 274 was subsequently paid to proper officials of Reeves County and the commissioners' court of said county duly authorized the release of said liens.

On February 14, 1924, the commissioners' court of Reeves County entered an order reciting that Loving County had received the proceeds of the note exccuted by Fowler in payment of the purchase price of league No. 271, and that said note had been fully paid and released by the holder of said note, but that no formal transfer of said note having been made to such holder a cloud was created on the title to said land; and the county judge of Reeves County was directed to execute a release on behalf of Loving County of any right, title, and interest of said Loving County in and to said vendor's lien note and to the land by which it was secured. Such release was executed as provided in said order.

Thereafter, on or about July 10, 1931, Loving County was reorganized. Funds including in part the purchase money of leagues 272, 273, and 274 upon demand were paid to Loving County by Reeves County. On or about June 27, 1935, through the commissioners' court, Loving County made a contract with G. E. Lockhart, an attorney, in form a sale of the four leagues of school land, but which, since no question is made of it upon this appeal, may be regarded as a contract of employment by said county of said attorney to represent it in an effort to recover the title and possession to said lands.

This suit involving only a part of said league 271 followed, it being an action of trespass to try title with additional allegations apparently designed, by way of anticipation, to negative the validity of any title claimed by the defendants and to constitute the basis for an alternative claim of title to the land on the theory of a rescission for nonpayment of the purchase-money notes, if the conveyance of the land should be sustained as sufficient to pass the equitable title to the said W. R. Fowler and through him to the defendants.

In a jury trial special issues were submitted, in response to which it was found by the special verdict: (1) That the commissioners' court of Loving County, Tex., was in session at Mentone, Tex., on February 19, 1894; (2) that said commissioners' court passed the order on February 19, 1894, a certified copy of which was introduced in evidence upon the trial; (3) that the proceeds, if any, of the note for $3,099.60 executed by W. R. Fowler as purchase money for league 271 were received by the county commissioners' court or the county treasurer of Loving County. From the judgment based upon said verdict, providing that plaintiff take nothing by the suit, said plaintiff Loving County has appealed.

It is quite apparent that special issues 1 and 2 sought to elicit findings of evidentiary facts and not of ultimate issues joined by the pleadings. However, it is further apparent, we think, that but one issue was supposed to be concluded by the finding of such evidentiary facts and what that issue was. It was either an issue of whether or not a certain purported certified copy of an order of the commissioners' court of Loving County, stated in the certificate to have been made February 19, 1894, and purporting to have been certified the same day, recorded in Dawson County January 18, 1907, was a forgery; or else, an issue of whether Loving County on February 19, 1894, had an organized existence with consequent capacity, through a commissioners' court, to make valid provision for the sale of, and conveyance of title to, the county school lands. If the latter was the issue a finding of which was sought to be concluded by special issues Nos. 1 and 2, we are of the opinion that, as an issue, it was not embraced in, or joined by, any pleadings. There were no pleadings by Loving County, even purporting to allege a cause of action for the cancellation of, or to have adjudged null and void, such purported action of the commissioners' court, or even the purported Loving County-to-Fowler deed. The presumption would, of course, be against any intention to submit an issue not made by the pleadings. Therefore, if the issue intended to be concluded by the findings upon issues Nos. 1 and 2, in the form and manner as submitted, was whether there was a functioning county government with capacity to pass the order in question, then after all that would be but an evidentiary fact, although conclusive, perhaps, of the issue of forgery. Issues 1 and 2 we think must be regarded as an attempted submission of the single issue of forgery and in themselves sufficiently indicative of such purpose as to impose upon Loving County

the duty of making objections to the form or manner of the submission of such issue, upon penalty of a waiver of any right to complain of same. R.S.1925, art. 2185; Harris v. Thornton's Dept. Store, Tex.Civ.App., 94 S.W.2d 849.

No such objections were made. In the absence thereof there was no error, as sought to be presented by other assignments of error, in the refusal of the court upon request of Loving County to submit the same issue in different form, even if a better or more correct form. Authorities supra, and Isbell v. Lennox, 116 Tex. 522, 295 S.W. 920.

Was there evidence to raise the issue of forgery? Before attempting to answer this question, we may say, as deemed sufficient answer to a number of assignments of error, that we think it certain the evidence did not conclusively establish that said certified copy of the order of the commissioners' court was a forgery.

In order to prove forgery Loving County undertook to show that on February 19, 1894, there was no commissioners' court in the territory of Loving County and, therefore, no such court capable of functioning as such and of making provision for the sale of county school lands. There was no other evidence of forgery. All the evidence offered and excluded, and the exclusion of which is complained of in several assignments of error, was of the same character. If to any degree probative upon the issue of forgery, it was so only because it tended to disprove the organized existence of a functioning commissioners' court and, therefore, the impossibility that such an order as the one in question could have been made or passed by the court.

The situation is that in this suit involving an issue of forgery as incident to a question of the admissibility of a purported certified copy of an order of the commissioners' court a question merely collateral to any question of the organized corporate existence of Loving County, and dependent capacity, to function as such, the issue of forgery is sought to be established by evidence competent only in a direct attack upon such organized corporate existence. This, we think, would violate the principles governing the distinction between direct and collateral attacks upon the legal existence of municipal corporations.

Loving County cannot in this suit, we think, be heard to assert that prior to February 19, 1894, it never had any organized corporate existence and hence no capacity to function as a county. It cannot claim that it had no such status on February 9, 1894. That was the date the four patents to the four leagues of school land were issued. The patents could not, of course, be delivered before they were issued. It was, therefore, on or after, but certainly not before, February 9, 1894, that the patents were delivered to Loving County and became effective as transfers of title from the State of Texas to said county. The assertion of title by Loving County through said patents necessarily presupposed the delivery of the patents to said county which was dependent upon the organized existence of the county, and consequent capacity to accept such delivery. Loving County is therefore in the position of being held to a recognition of its capacity to function as a county on February 9, 1894, while denying that it had such capacity ten days later, on February 19, 1894. In this collateral proceeding the evidence, if any, of the lack of organized corporate capacity of Loving County to take the purported action disclosed by the terms of the certified copy must affirmatively appear in such purported action in order to be available as evidence. In other words, passing over for the present any question of the admissibility in evidence of such purported order as against other objections, the evidence of forgery consisting only of an inference from lack of capacity of the commissioners' court to pass the order in question must be found affirmatively appearing in the purported record of such action, that being the only way such a collateral attack is permissible, and not by any extrinsic evidence. Or to state it still differently, the purported action must carry such evidence of its own invalidity as to be subject to collateral attack, and if the purported order does not affirmatively show there was no existing organized county government and hence no capacity to pass such order, then no extrinsic evidence to establish such fact can be regarded as evidence that the order was forged.

We are forced to the conclusion that other than evidence, if any, tending and designed to show that Loving County had no organized de facto existence and therefore no capacity to function as

such there was no evidence of forgery; from which it would follow that no such issue was required to be submitted to the jury.

Errors, therefore, if any, in reference to the submission of special issues 1 and 2 were harmless. Should we be mistaken, however, in this view, and it should be held that the evidence would raise an issue of fact, the issue was concluded against Loving County by the verdict of the jury.

■ In connection with the consideration of the first two issues submitted to the jury, it is deemed appropriate to consider at this point questions involving the third special issue. By that issue, it will be remembered, it was found that the commissioners' court or county treasurer of Loving County had received the proceeds of the $3,099.60 note given as the purchase price of said league 271 in suit. The note by its terms as recited in the deed was dated February 21, 1894, and was due five years after date, or on February 21, 1899. The defendants were shown to have been in peaceable, adverse possession of the land since 1906, claiming title thereto through the Loving County-to-Fowler deed and under circumstances which would ordinarily make them innocent purchasers for value. During that time there was no reacknowledgment or renewal of said note. Although by express provision of the Constitution, art. 7, § 6, no statute of limitation was operative, it has been held that a statute may, and does, declare a conclusive presumption of payment under such circumstances, Rev. St.1925, art. 5521. McKinney v. Freestone County, Tex.Com.App., 291 S.W. 529. It, therefore, appears that issue No. 3 involved, or was, an issue of law and not of fact, and hence not one properly to be submitted to the jury. The finding being in accord with the presumption of law upon the facts, it may be properly disregarded as having no material bearing in the case for or against either party.

■ Thus we reach the conclusion that the correctness of the judgment in all respects wherein challenged by this appeal may be determined without reference to the verdict of the jury; all errors, if any, in the manner and form of submitting issues or as to whether there was any evidence, or insufficient evidence, to support the verdict, etc., being under this view immaterial.

Assuming the existence of a commissioners' court of Loving County on February 19, 1894, and its capacity to provide for the sale of the county school lands— the suit under the conclusions already stated being of a nature not to permit of inquiry to determine the contrary—the main questions presented by the appeal involve the admissibility in evidence, and legal effect of, two written instruments. One is the purported deed of Loving County to Fowler, dated February 21, 1894, filed for record in Dawson County on February 28, 1894. The other is the purported certified copy of an order of the commissioners' court of Loving County made February 19, 1894, filed for record in Dawson County January 18, 1907. Said certified copy of order seems to have been considered of so great importance by all parties to the suit as to justify copying in full, with the certificate of authentication, as follows:

"It is ordered by the County Commissioners Court of Loving County, Texas, that J. J. Combs, County Judge of said County, be and is hereby appointed agent of Loving County, and as such agent he is hereby authorized and empowered to sell the following described school lands belonging to said Loving County, to-wit:

"Four Leagues of land all situated in Dawson County, Texas, the same being granted by virtue of patents, each for one league of land as follows:

"No. 299 Vol. 25, known as league No. 271;

"No. 300 Vol. 25, known as league No. 272;

"No. 301 Vol. 25, known as league No. 273;

"No. 302 Vol. 25, known as league No. 274;

all signed by J. S. Hogg, Governor, and countersigned by W. L. McGaughey, Commissioner of the General Land Office, and all being dated February 9, 1894.

"And it is further ordered by the court that said J. J. Combs County Judge as agent of said Loving County, be and is hereby empowered and authorized to sell said lands by four separate deeds, one for each league of land, on a credit, for seventy cents per acre, and shall execute to the purchaser four several deeds, one for each league of said land, and shall take from said purchaser his four several promissory notes, each for the sum of $3099.60, pay-

the deed and not as a certified copy of the record of the deed. Counsel of Loving County, in objecting to such admission, seems to have made separate objection to the deed and "also * * *. to the introduction of the record of such instrument because the execution of the instrument has not been proved in any manner provided by law." The instrument as set out in the statement of facts does not purport to be a certified copy, and the reference to a copy of the record in the objection is the only reason for questioning whether the original deed or the record was introduced. A colloquy between counsel disclosed that there was no claim that J. J. Combs did not sign the deed, but only his authority to execute the deed for Loving County was contested. If the instrument was the original deed, there was no objection as distinct from other objections questioning its admissibility as an ancient instrument. Under these circumstances, whether the instrument was the original deed or a certified copy of the record may be regarded as immaterial. In either case, the objections made, or at least in so far as deemed of sufficient merit to require discussion, challenged the admissibility of the instrument only upon the theory that Combs was without authority to execute it as the binding act and deed of Loving County.

Loving County by its eighth proposition asserts: "since it is conclusively shown by the evidence in this case that the purported order under which J. J. Combs is alleged to have executed the deed to W. R. Fowler is void, and *no other authority for the execution of such instrument being shown,* and the defendants having no title to the land and premises in controversy other than that emanating through the deed from Combs to Fowler, the trial court erred in admitting in evidence said deed from Combs to Fowler, and the other instruments under which defendants seek to deraign title from Fowler to the land and premises in controversy." (Italics ours.) It was agreed that all the official records of Loving County, prior to its disorganization in 1897, were lost.

The said purported deed from Loving County to Fowler did not on its face, at least, conclusively show that Combs had no authority to execute it. It recited that he did have such authority. The original deed, certain facts appearing, was admissible as an ancient instrument without further proof of authorized execution. As said before, no objection was made to the effect that essential facts did not appear to render the deed admissible as an ancient instrument. If the instrument admitted in evidence was a certified copy of the ancient record of the deed, then we think such certified copy of the ancient record was admissible just the same as the original with a showing of the essential circumstances, would have been admissible. The deed not bearing upon its face evidence conclusive of the invalidity of the power under which it was purported to be made, but affirmatively purporting to be made under a power which could be sufficient, there was such a presumption of the existence of an adequate and valid power as to make the ancient deed or record thereof admissible in evidence without proof of the power.

It is our understanding that if an instrument would be an ancient instrument subject to record and duly recorded at such a time that the record would be ancient, a certified copy of the record is admissible, even as against an affidavit of forgery. Emory v. Bailey, 111 Tex. 337, 234 S.W. 660, 18 A.L.R. 901. The admissibility of an ancient instrument dependent for validity upon the existence of a power, upon the theory of a presumption of the existence of such power, is sustained by many decisions in this state. Brown v. Simpson's Heirs, 67 Tex. 225, 231, 2 S.W. 644; Garner v. Lasker, 71 Tex. 431, 9 S.W. 332, 334; Harrison v. McMurray, 71 Tex. 122, 129, 8.S.W. 612; Hensel v. Kegans, 79 Tex. 347, 15 S.W. 275, 276; Smith v. Shinn, 58 Tex. 1, 4; Manchaca v. Field, 62 Tex. 135; Veramendi v. Hutchins, 48 Tex. 531; Johnson's Adm'r v. Timmons, 50 Tex. 521, 534; Ferguson v. Ricketts, Tex.Civ.App., 55 S.W. 975; Askew v. Cantwell, Tex.Civ.App., 146 S.W. 720; Humphreys v. Green, Tex. Civ.App., 234 S.W. 562; McDonald v. Hanks, 52 Tex.Civ.App. 140, 113 S.W. 604; W. T. Carter & Bro. v. Bendy, Tex.Civ. App., 251 S.W. 265; Batcheller, v. Besancon, 19 Tex.Civ.App. 137, 47 S.W. 296, 298; Williams v. Hardie, Tex.Civ.App., 21 S.W. 267. Hence we reach the conclusion that on the question of the admissibility of the deed it was entitled to be admitted without regard to the admissibility of said order of the commissioners' court of February 19, 1894. Prima facie legal title

through that deed was shown to be in the defendants.

Under this view, the most important question regarding the order of the commissioners' court is not its admissibility in evidence, but rather its effect as evidence with respect to the question of whether and to what exent, if any, it rebuts the presumption which, as we have just said, rendered the said deed admissible.

 We think the certified copy of the order was admissible as against every proposition made· and urged by Loving County. Even if it were not, the error would benefit, rather than prejudice Loving County. It appears that the most serious questions in the case regarding the validity of defendants' title arise upon the terms of said order of the commissioners' court, which, in the view just stated, the defendants were under no necessity of introducing, and hence, but for such evidence, would not be in the case.

 While evidence of the existence of a valid power to authorize the execution of the Loving County-to-Fowler deed was supported by a presumption, authorizing the admission of such deed in·evidence, the presumption, although at one time held to be a presumption of law (Johnson's Adm'r v. Timmons, 50 Tex. 521, 534), was later determined to be a presumption of fact. Stooksbury v. Swan, 85 Tex. 563, 22 S. W. 963. If a presumption of fact, it was, of course, rebuttable; and the contention of Loving County, in this case, is consistent with no other view than that the order of the commissioners' court in question was the only authority, if any, under which Combs acted in making the conveyance of the lands to Fowler and that the order itself shows that Combs was without lawful authority to so act, thus rebutting such otherwise existing presumption.

Since Loving County strenuously insists upon various grounds that the certified copy of the order of the commissioners' court was incompetent and therefore inadmissible, and since in our view, as above stated, if it were disregarded the judgment would be more unquestionably correct, it would materially simplify the case were we to assume without deciding that Loving County's contentions are correct in that regard. However, if the admission in evidence of the instrument conclusively rebuts the existence of the otherwise presumed authority of Combs to execute said Loving County-to-Fowler deed, we think we should so hold. Hence, we proceed to the examination of that question.

In such consideration several elements are involved. (1) Was the order evidenced by the certified copy conclusively and as a matter of law shown to be the same "order of the commissioners' court" referred to in said deed as authority for its execution? (2) If so, would such order conclusively rebut the presumption of the authority of Combs to execute the deed, if it should be held that a part of the order was void in undertaking to vest in such agent a discretion to transfer the notes; but was· sufficient in specifying the terms of sale of the land? (3) If the evidence consisting of such certified copy of order raised an issue of fact as· to the validity of said Loving County-to-Fowler deed, who had the burden of procuring a favorable finding of such issue?

 Upon the first question some analogy is believed· to be found in the rule governing the ·rebuttal of recitations in judgments of jurisdictional facts. The analogy is not exact, of course, for when a question of the validity of a judgment arises collaterally the recitation therein of jurisdictional facts imports absolute verity; while the recitation of power to execute a deed, which is an ancient instrument, may, not inaccurately, we think, be said to import prima facie verity. In the one case no extrinsic evidence will be admitted to rebut the presumption of jurisdiction —power to render the judgment—while in the other such evidence is admissible. But until some evidence is admitted having such effect or raising an issue of the matter, there would, it seems, be no practical difference between absolute verity and prima facie verity. It is believed that the record will support as. fair the statement that there was no evidence tending to rebut the presumption of authority to execute the deed, unless said certified copy of the order of the commissioners' court constitutes such evidence. Had the county records been available for evidence, their production, showing no other order than the one evidenced by the certified copy, would no doubt have established that such was the authority referred to in the deed. If the deed in referring to the order recited as authority for its execution had so described it as certainly to identify

the order shown by the certified copy in evidence, that would have established that the validity of the deed was dependent upon the validity and sufficiency of the particular order. In principle, the decision in Fowler v. Simpson, 79 Tex. 611, 15 S. W. 682, 23 Am.St.Rep. 370, supports such statement. But in Treadway v. Eastburn, 57 Tex. 209, involving consideration of a collateral attack upon a judgment, the court held that the recitation in the judgment of due service without identifying the service could not be contradicted by a return in the, papers of the case purporting to show service which was insufficient. It was held the presumption would include the existence of other and sufficient service. So here, it would seem, while the order is admissible for all it will prove; if it should be held to confer no authority sufficient to authorize Combs to execute said deed, even that would not be conclusive without evidence that the particular order was the one upon the authority of which the deed purported by its recitations to be authorized. It may be granted that under such facts an inference would be warranted that such order was the one recited; but unless the inference was a necessary one, which we think it cannot be held to be, an issue of fact would be presented for the jury.

 The order of the commissioners' court evidenced by the certified copy in question, in our opinion, not only failed to rebut the presumption necessary to support the Loving County-to-Fowler deed, but established such authority. The order prescribed all the terms of sale. It did not name the purchaser but such omission cannot, we think, accurately be said to involve the omission of any of the terms of sale. That such an order prescribing all the terms of sale, except to name the purchaser, involves no want of compliance with the requirements of the principle that the commissioners' court, being a trustee, is without power to delegate to another the powers or duties of the trust, seems to be supported by the decisions in Matagorda County v. Casey, 49 Tex.Civ.App. 35, 108 S.W. 476; Foard County v. Sandifer, 105 Tex. 420, 151 S. W. 523; Freestone County v. McKinney, Tex.Civ.App., 285 S.W. 340; McKinney v. Freestone County, Tex.Com.App., 291 S. W. 529.

One part of the order, the validity of which is subject to serious question, could

very well have been the subject matter of a separate and distinct order. The reference is to the provision that "said J. J. Combs is hereby authorized and empowered to negotiate and transfer said notes or any of them at any time by indorsement of Loving County by him as County Judge and agent, for such sum as may in his judgment be advisable not to be less however than the principal thereof." If this provision must by its own terms be condemned as void because of the discretion it purports to vest in Combs, particularly with reference to the sale price of the notes in excess of the principal of the notes, it is not, in our opinion, so connected with and essentially a part of the order granting authority to convey the land upon the specified terms as to invalidate such power to convey. The county would have had the right to sue and recover the unlawfully transferred note or damages for a conversion thereof. Further, while there is some evidence that the note was transferred—consisting principally of the fact that it was released by two persons each claiming to be the owner—there was no evidence that it was transferred by Combs, or under the authority of the order in question, or that the full amount of principal and interest (if any at the time due) of the note was not paid at the time of such transfer.

 We have already indicated that at the very most the effect of the certified copy of the order in question would be to raise an issue of fact. Loving County as plaintiff assumed the burden of pleading and proof sufficient to establish its title to the land. It discharged the burden of pleading a cause of action. Upon introduction of the patents it discharged prima facie the burden of proof. But when the Loving County-to-Fowler deed was introduced in evidence, the burden of proceeding shifted back to Loving County. It always had the burden of proof as that never shifts. 17 Tex.Jur. 324, § 98. Unless, therefore, the production in evidence of the certified copy in question contrary to our conclusion established conclusively as a matter of law against the otherwise existing presumption of authority, the want of authority in Combs to convey said land to Fowler, then there was no finding of an issue necessary to support a judgment for Loving County, and the judgment for the defendants was correct. Miller v. Fenner, Beane & Ungerleider, Tex.Civ.App., 89 S.W.2d 506.

But even if we be in error in holding that the order did not rebut the presumption of authority to make the conveyance, we are nevertheless of the opinion that Loving County was shown to be estopped by judgment to question the validity of the said order, or of the deed.

Preliminary to this question, however, it is in order to consider the one relative to the asserted invalidity of the act of the Legislature of 1897 providing for the disorganization of Loving County. It is argued that the caption of that act was insufficient to give notice of the purpose to authorize Reeves County in the name, and on behalf of, Loving County to take all necessary steps by suit "to recover back to said county all lands and other property properly belonging to it which may have been wrongfully converted or disposed of by any person assuming to act for said county or otherwise." The caption gave notice that the act was to "provide for the disorganization of the County of Loving * * * and to attach said county to the county of Reeves for judicial *and other purposes* and to provide for the assessment and collection of taxes in said county and for the payment of the outstanding indebtedness of said county." (Italics ours.) We think the caption sufficient as involving no lack of compliance with Const. art. 3, § 35, requiring that no bill shall contain more than one subject, "which shall be expressed in its title." The maxim that the expression of one thing is the exclusion of another does not apply as a test of compliance with this provision of the Constitution. Doeppenschmidt v. International & G. N. Ry. Co., 100 Tex. 532, 101 S.W. 1080; Consolidated Underwriters v. Kirby Lumber Co., Tex.Com.App., 267 S.W. 703. In the caption in question there is to be·read no implication of the exclusion of any purpose which might be stated in the body of the act, except, of course, purposes· contrary to those expressly specified in the caption. Nothing expressed in the caption negatives by implication a purpose to attach the disorganized county to the organized county of Reeves in order to enable the latter to bring suits to recover lands or notes which might have been converted or transferred without lawful authority.

Regarding other contentions, questioning the validity of said act, we can think of no constitutional restriction, nor are we cited any, upon the power of the Legislature which would inhibit the Legislature from enacting such provision. The question is not involved whether the Legislature may have had authority to authorize Reeves County to make provision for the sale, and to authorize conveyance, of school lands belonging to Loving County. Without intimating any opinion upon that question, it is sufficient, we think, to say that in our view a grant of authority to Reeves County during the time that Loving County was without capacity to do so, to bring suits for the recovery of such lands unlawfully disposed of is something very different.

Upon the question of estoppel, the evidence shows, we think, conclusively that in the Howard County suit brought for recovery of the four leagues of school land, although before judgment league 271 was eliminated, the issue of the validity of the commissioners' court order of date February 19, 1894, and also the validity of the Loving County-to-Fowler deed, was litigated and adjudged in favor of the validity of such deed and order. Graham was the then owner of all four leagues of land. The defendants claim under Graham and were therefore in privity with him. 26 Tex.Jur. p. 235, § 462. Loving County was a party to the suit by name represented by Reeves County under the statutory authority already mentioned. "A judgment * * * operates as an estoppel irrespective of whether the second suit is based upon the same claim or demand or not, and the effect of its operation as such is to inhibit a re-examination in the second suit of any matter that was necessarily determined by it. In other words, a judgment which is not a bar to a second suit because the claim or demand is different may nevertheless operate to prevent a relitigation therein of any issue that it necessarily adjudicated." 26 Tex.Jur. p. 179, § 437. For examples of the application of the principles of estoppel by judgment under circumstances which appear analogous to those here involved, see Houston Terminal Land Co. v. Westergreen, 119 Tex. 204, 27 S.W. 2d 526; Judkins v. Doty, Tex.Civ.App., 27 S.W.2d 588; Parlin & Orendorff Implement Co. v. Frey, Tex.Civ.App., 200 S.W. 1143.

It does not appear upon what theory the court, by one provision of the judgment in the Howard County suit, canceled the notes given as consideration for the purchase price of leagues 272, 273, and 274, and yet

declared the existence of a lien to secure the original sale price of 70 cents per acre. It must be admitted that it is difficult to see how that action could have been proper. It is deemed sufficient to say, however, that it does not affirmatively appear from the terms of the judgment itself that the court was without jurisdiction to so adjudge, even though that should appear to be probable. If the court had no jurisdiction to declare the particular matter, it would not affect the judgment in the other matter of declaring title to the land in Graham, since the error, if any, may have been wholly confined to the cancellation of the notes and requiring an appeal for correction.

We are inclined to the opinion that ratification simply as such was not shown. There was an absence of power to ratify without payment. There was no evidence of actual payment of any part of the purchase price of the land to Loving County or to Reeves County, except as it may have been supplied by presumption, or except as estoppel may have operated in lieu of such evidence. If the presumption of payment obtains or the estoppel forecloses that question, there is no necessity for recourse to ratification. If such presumption be not available as a substitute for proof of payment and the order of the commissioners' court of Reeves County directing the release be not effective as an estoppel by judgment, a question we have deemed it unnecessary to decide, then there was no evidence to support ratification. Loving County, after its reorganization in 1931, demanded and received from Reeves County certain funds representing in part the purchase price of leagues 272, 273, and 274, but not league 271 involved in this suit. There can be no presumption of ratification based upon the presumption of payment, as that would violate the elementary principle that a presumption cannot be supported alone by another presumption.

It is believed that our conclusions hereinbefore stated show that the judgment rendered was the only one which could properly have been rendered. We are also of the opinion that all the assignments of error relied upon in the brief of Loving County are, if not already answered in the opinion, rendered immaterial. If not however, they are overruled without further discussion.

Being of the opinion that the judgment of the court below should be affirmed, it is accordingly so ordered.